John W. POWELL, Plaintiff,

v.

UNITED STATES of America, DEPART-
MENT OF JUSTICE, Defendant.

No. C–82–0326–MHP.

United States District Court,
N.D. California.

July 6, 1983.

Thomas Steel, San Francisco, Cal., for plaintiff.

Barbara Parker, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## OPINION

PATEL, District Judge.

Plaintiff John W. Powell brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents relating to the indictment and prosecution of himself, his wife Sylvia Powell, and his friend Julian Schuman for sedition and treason. The indictment was based solely on articles critical of the United States' role in the Korean War and its policy towards China, written and published by the Powells and Schuman in Shanghai in the *China Monthly Review* from 1950–1953. The indictment was brought in 1956 and ultimately dismissed in 1961. Plaintiff intends to make future use of the documents requested here, as he has used information obtained from other agencies, as material for personal writing projects and as a research source for others.

Powell first requested documents from the Department of Justice in late 1978. Over the next three and one-half years, the Department took no action in response to his repeated requests except to inform him of his place and progress on a waiting list of pending requests. During that period, plaintiff's request advanced from number 109 on the waiting list to number 98 as of January 13, 1982, when he filed an action for injunctive relief with this court. At this rate of approximately four requests per year, the Department would not have processed plaintiff's request until after the year 2006. Nonetheless, at the outset of this action, the Department moved to stay these proceedings until it had processed plaintiff's request through its established procedures, a period of indefinite duration. Rejecting the Department's position, on April 19, 1982, the court granted plaintiff's motion to compel production of non-exempt records

and preparation of a *Vaughn*[1] index as to exempt records.

Pursuant to the court's April 19 order, the Department has finally released over three thousand pages of non-exempt documents and several *Vaughn* indices. However, a motion for contempt and over six months' delay was necessary before the government complied, and then only inadequately. The Department's exemption claims are the subject of another court order and appear to involve substantial future litigation. Plaintiff now moves for an award of interim attorneys' fees and costs in the amount of $16,804.24 under 5 U.S.C. § 552(a)(4)(E). He alleges that he cannot continue to prosecute this litigation in the absence of such an award.

## I. The Availability of Interim Fees Under the FOIA

Section 552(a)(4)(E) of the FOIA provides:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

Whether interim fees are available under this provision raises a novel issue which only one other district court has addressed in a published opinion. *See Biberman v. Federal Bureau of Investigation,* 496 F.Supp. 263 (S.D.N.Y.1980). After reviewing the legislative history, the *Biberman* court concluded that § 552(a)(4)(E) authorizes interim fees in those cases in which it is "necessary to the continuation of litigation which has proven to be meritorious at the time of the application." 496 F.Supp. at 265. Having carefully considered the issue, the court concludes that § 552(a)(4)(E) does authorize the award of interim fees.

Although there is scant authority on this question in published cases construing the FOIA, persuasive authority under parallel fees provisions in other statutes supports the court's conclusion. In *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court construed § 718 of Title VII of the Emergency School Aid Act, 20 U.S.C. § 1617, to authorize the award of interim fees. § 718 provides:

Upon the entry of a final order by a court of the United States against a local educational agency, a State (or agency thereof), or the United States (or agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of Title VI of the Civil Rights Act of 1964, or the Fourteenth Amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*Bradley* was a protracted school desegregation suit. The district court had found that the school district was not in compliance with the requirements set forth in several Supreme Court opinions and ordered the School Board to propose a desegregation plan. The court rejected the Board's first two proposed plans but ordered that the second be implemented on an interim basis. Subsequently, the court approved a third plan and awarded plaintiffs interim attorneys' fees. Even though the case was not yet concluded and further modifications of the court's orders were likely, the Supreme Court upheld the award. The Court reasoned that many final orders may issue in the course of litigation and that to delay awarding fees until the conclusion of all litigation would work substantial hardship on plaintiffs and their attorneys and would discourage the institution of actions, contrary to the Congressional intent expressed in § 718. Accordingly, it concluded, "[a] district court must have discretion to award

1. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

fees and costs incident to the final disposition of interim matters." *Bradley,* 416 U.S. at 723, 94 S.Ct. at 2022.

The Supreme Court reached a similar conclusion under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, in *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). § 1988 provides,

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1988 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In *Hanrahan,* the Court held that in appropriate circumstances § 1988 does authorize the award of interim fees:

> It is evident also that Congress contemplated the award of fees *pendente lite* in some cases. S.Rep. No. 94–1011, *supra,* at 5; H.R.Rep. No. 94–1558, *supra,* at 7–8 . . . . The House Committee Report . . . approved the standard suggested by this Court in *Bradley,* that " 'the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees . . . ,' " H.R.Rep. No. 94–1558, *supra,* at 8 (quoting *Bradley v. Richmond School Board, supra,* [416 U.S.] at 723, n. 28 [94 S.Ct. at 2022, n. 28] ). Similarly, the Senate Committee Report explained that the award of counsel fees *pendente lite* would be "especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S.Rep. No. 94–1011, *supra,* at 5 (emphasis added). It seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims.

446 U.S. at 757–58, 100 S.Ct. at 1989. *See also Westfall v. Board of Commissioners of Clayton County,* 477 F.Supp. 862 (N.D.Ga. 1979) (awarding interim fees under § 1988).

The courts have reached the same result under the attorneys' fees provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). That section provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

In *Van Hoomissen v. Xerox Corp.,* 503 F.2d 1131 (9th Cir.1974), the plaintiff brought suit against Xerox claiming that it had fired him in retaliation for his efforts to recruit minorities. The Equal Employment Opportunity Commission ("EEOC") then sought to intervene both to support plaintiff's claim and to allege that Xerox engaged in discriminatory hiring practices. The court granted the motion limited to supporting plaintiff's claim, and the EEOC appealed. After the Ninth Circuit dismissed the appeal, Xerox petitioned the court of appeals for an award of interim attorneys' fees under § 2000e–5(k) and the court granted the petition. Although the court noted that fees should not be granted every time a party prevails on a procedural motion, it concluded that in that case Xerox's victory, as a final determination in that litigation of EEOC's hiring discrimination claim, was "sufficiently significant and discrete to be treated as a separate unit." *Van Hoomissen,* 503 F.2d at 1133.

The Ninth Circuit reaffirmed *Van Hoomissen* in *Smallwood v. National Can Co.,* 583 F.2d 419 (9th Cir.1978). In *Smallwood* plaintiff brought suit against his employer alleging racial discrimination. He subsequently added his union as a defendant, charging that it had retaliated against him for filing the lawsuit. Prior to considering the merits of the discrimination claim, the court held a hearing and determined that the union had retaliated against plaintiff in violation of the Act. It permanently enjoined the union from any further retaliation and awarded plaintiff interim fees and costs. The Ninth Circuit affirmed, again finding that the claim against the union was "sufficiently significant and discrete to be treated as a separate unit." *See also Yakowicz v. Commonwealth of Pennsylva-*

*nia,* 683 F.2d 778, 781–82 & n. 5 (3d Cir. 1982) (citing *Smallwood* with approval). Similarly, many courts have awarded interim fees in Title VII actions after plaintiffs have established liability but before the remedial phase of the litigation has been completed. *See, e.g., James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 358–59 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Nicodemus v. Chrysler Corp.—Toledo Machining Plant,* 445 F.Supp. 559 (N.D.Ohio 1977).

Moreover, those courts which have declined to grant interim fees have not done so on the grounds that these attorneys' fees provisions do not authorize interim awards. Rather, consistent with the cases discussed above, they have concluded that interim fees are authorized only where the plaintiff has established an entitlement to some relief on the merits of his claim. For example, in *Grubbs v. Butz,* 548 F.2d 973 (D.C. Cir.1976), plaintiff brought a Title VII action against the Department of Agriculture charging discrimination on the basis of sex. At the same time, the Department instituted administrative proceedings on her allegations. Plaintiff then sought to enjoin the Department from continuing the administrative proceedings. The court denied a preliminary injunction, ruling that plaintiff would be required to exhaust her administrative remedies before proceeding in the district court. On appeal, the court reversed the exhaustion ruling but affirmed the denial of preliminary relief. Plaintiff then sought interim fees in the court of appeals. Denying her request, the court held that plaintiff's significant procedural victory could not justify an interim award because it did not constitute prevailing on the merits. However, the court specifically noted that an interim award may be appropriate after a finding of discrimination:

> Nor do we denigrate the propriety of an interim award once discrimination has been established. As Justice Blackmun wrote for a unanimous court in *Bradley v. School Board of City of Richmond,* courts "must have discretion to award

fees and costs incident to the final disposition of interim matters."
*Grubbs* at 976–77.

Similarly, in *Hanrahan,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670, the district court had directed verdicts in favor of defendants and had denied several of plaintiffs' motions. On appeal, the court of appeals reversed the directed verdicts, reversed the denial of plaintiffs' motion to discover the identity of an informant and ordered the court to consider allowing further discovery and to conduct a hearing on plaintiffs' contention that defendants should be sanctioned. The court of appeals also awarded plaintiffs their costs on appeal, including interim attorneys' fees. The Supreme Court reversed the award of fees because plaintiffs had not prevailed on the merits of any of their claims and had only established that they were entitled to a trial. Under these circumstances, the Court concluded, § 1988 did not authorize interim fees.

The analysis applied in the cases upholding interim awards applies equally to plaintiff's motion in the instant case. Like many FOIA suits, plaintiff's action has proceeded in two distinct phases. In the first phase, plaintiff established his right to release of all non-exempt documents responsive to his request. The second phase of the lawsuit will involve protracted litigation over the validity of the claimed exemptions. The issues raised in the first phase are totally separate and distinct from those at issue in the exemption phase. Pursuant to court order, plaintiff has obtained the release of three thousand pages of documents and several *Vaughn* indices. He now seeks fees for hours spent obtaining this relief. Unlike the orders in *Hanrahan* and *Grubbs,* the relief granted is on the merits, is final and binding, and will be unaffected by further litigation. Consequently, the court's order constitutes a determination of "substantial rights of the parties" and is "an important matter in the course of litigation." *Hanrahan,* 446 U.S. at 758, 100 S.Ct. at 1989. The first phase of this lawsuit is "sufficiently significant and discrete to be treated as a separate unit." *Van Hoomis-*

*sen,* 503 F.2d at 1133. This conclusion is consistent with the Supreme Court's most recent evaluation of attorneys' fee awards under § 1988. In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Court referred approvingly to several formulations of the threshold showing for an entitlement to attorneys' fees. It is sufficient if the parties succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). Plaintiff has succeeded on a significant issue that instigated this litigation.

*Westfall v. Board of Commissioners of Clayton County,* 477 F.Supp. 862, is quite similar to the instant case. In *Westfall,* plaintiff brought suit attacking a county licensing ordinance as violative of the First Amendment. In response to the complaint, the Board of Commissioners amended the ordinance in an attempt to cure its constitutional defects, and plaintiff then amended his complaint to challenge the new ordinance. Plaintiff also moved for interim fees for the hours spent in preparing the initial complaint. Citing *Van Hoomissen,* the court awarded the requested fees, stating:

> the controversy with respect to the original attack on defendants' regulation of solicitation has concluded; nothing further remains to be done or could be done in that phase of this case. Accordingly, the court concludes that plaintiff is a prevailing party as to the initial phase of this litigation and is entitled to the interim award requested.

477 F.Supp. at 868. In the instant case, the controversy over the timing of the release of the requested documents is resolved. The Department has released the documents which it believes are responsive to the request. Nothing remains to be done or could be done in that phase of this lawsuit.

Furthermore, the legislative history of § 552(a)(4)(E), although not directly addressed to the interim fees issue, strongly supports the court's conclusion. First, the House Committee Report, in explaining the basis for the attorneys' fees provision, specifically cited to the attorneys' fees provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k), and § 718 of the Emergency School Aid Act, 20 U.S.C. § 1617. H.R.Rep. No. 93–876, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6267, 6272 n. 10. As discussed above, the latter two provisions have been held to authorize interim awards. The Senate Conference Report likewise directs courts to consider the existing body of attorneys' fees law in exercising their discretion in deciding whether to award fees. S.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974) (Conference Report), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6285, 6288. Taken together, these comments manifest Congress' clear intention that § 552(a)(4)(E) be construed in the light of the interpretations given similarly worded attorneys' fees provisions in other statutes. In the absence of a compelling reason why FOIA cases should be accorded different treatment, interim fees should be awarded in the same or similar circumstances in which they would be awarded under the attorneys' fees provisions of Title VII, § 1988, and the Emergency School Aid Act.

■ Moreover, Congress' intent in enacting the FOIA and § 552(a)(4)(E) strongly supports the view that interim awards are appropriate in some cases. The overriding purpose of the FOIA is to mandate a policy of broad disclosure of government documents and maximum feasible public access to government information. *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 741–42 (9th Cir.1979); *Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 715 (D.C.Cir.1977). As initially enacted, the Act had no provision for attorneys' fees. However, as part of its goal to provide a more efficient, prompt, and full disclosure of information, Congress amended the FOIA in 1974 to provide for attorneys' fees for substantially prevailing plaintiffs. H.R.Rep. No. 93–876, *reprinted in* [1974] U.S.Code Cong. & Ad-

min.News at 6271. The Court of Appeals for the District of Columbia has described the background to enactment of the attorneys' fees provision:

Section 552(a)(4)(E), like the other provisions added to the FOIA by the 1974 amendments, grew out of a general dissatisfaction with the administrative response to the policy of open government embodied in the Act. Extensive oversight hearings held in 1971 and 1972 brought to light substantial "foot-dragging" on the part of administrative officials who invoked every conceivable delaying technique and forced citizens requesting information under the FOIA to resort to expensive litigation for vindication of their statutory rights. Several witnesses suggested either financial penalties for inordinate delay in responding to a FOIA request or the award of attorney fees to successful FOIA plaintiffs.

*Nationwide,* 559 F.2d at 710 (footnotes omitted).

Congress enacted the attorneys' fees provision to ensure citizen access to the courts to vindicate their statutory rights and "to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide,* 559 F.2d at 711; *Biberman,* 496 F.Supp. at 264. The Senate Judiciary Report commenting on the attorneys' fees provision states,

[the] provision was seen by many witnesses as crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insurmountable [sic] for the average person requesting information, allowing the government to escape compliance with the law....

[A]s observed by Senator Thurmond:

We must insure that the average citizen can take advantage of the law to the same extent as the giant corpora-

tions with large legal staffs. Often the average citizen has foregone the legal remedies supplied by the Act because he has had neither the financial nor legal resources to pursue litigation when his Administrative remedies have been exhausted.

S.Rep. No. 93–854, 93d Cong., 2d Sess. at 17–18 (1974), *quoting from 1973 Senate Hearings,* Vol. 1 at 175.

Unfortunately, Congress' intent to promote more efficient, prompt, and full disclosure of government information has not been fully realized. Even after the 1974 amendments, FOIA litigation is often like trial by ordeal. The court in *Dunaway v. Webster,* 519 F.Supp. 1059, 1066 n. 5 (N.D. Cal.1981), commented on this problem:

This is not the first time that the government's dilatory tactics have reached a point where the courts have felt an obligation to admonish the government for its behavior. *See Founding Church of Scientology of Washington, D.C. v. Miller,* 490 F.Supp. 144, 146 n. 1, 150 (D.D.C. 1980); *Irons v. Bell,* 596 F.2d 468, 470 (1st Cir.1979) (FBI moved "with glacial celerity."). The government may well feel that by making these FOIA proceedings as lengthy and costly as possible, it will discourage others from pursuing their rights under the Act, *even in those cases where the plaintiff ultimately prevails in whole or in part.* Not only is this a dangerous litigation strategy, but one which is inappropriate to a coordinate branch of the federal government, whose interest will be served by the equitable and fair enforcement of all the laws. (emphasis added).

The instant case also provides a good example of agency dilatory tactics. Despite the clear congressional mandate that FOIA requests be handled expeditiously, the Department engaged in inordinate delay in processing plaintiff's request. When plaintiff finally brought suit three and a half years after his initial request, the Department sought a stay of proceedings in this court until the agency had fully processed plaintiff's request through its normal proce-

dures, a period which at a minimum would have lasted many years. Even after the court ordered the Department to release the requested documents within twenty days, it required a motion for contempt and well over six months for the Department to comply and then only inadequately.

█ Without an award of interim fees, many plaintiffs without the financial wherewithal to engage in such protracted litigation would be forced to abandon their FOIA lawsuits in mid-stream. Without the potential for an interim award, some citizens might refrain from filing suit at all. It would contravene the express congressional purposes of the Act if an agency could achieve the unjustified withholding of information solely because of its financial capacity to outlast the intended beneficiaries of the FOIA. In a slightly different context, the *Nationwide* court instructed the lower courts to be guided by the fundamental purposes of the FOIA and § 552(a)(4)(E)—to encourage the maximum feasible public access to government information and to facilitate citizen access to the courts for vindicating their statutory rights—when exercising their discretion as to whether to award attorneys' fees. 559 F.2d at 715. Where a plaintiff cannot otherwise afford to continue litigating his or her FOIA suit, the purposes of the Act require that the district court have discretion to award interim fees. *See Biberman v. Federal Bureau of Investigation,* 496 F.Supp. at 265 (relying on legislative history to conclude that interim fees should be awarded where in absence of an award plaintiff would be unlikely to proceed with the litigation).

The government urges this court to adopt the reasoning of an unreported case, *Letelier v. Department of Justice,* No. C–79–1984 (D.D.C. October 2, 1980),[2] holding that interim awards are not authorized under the FOIA. The facts of *Letelier* closely parallel those in the instant case. Pursuant to court order, the Department of Justice had released a large number of documents, but

the court had yet to resolve disputes as to the applicability of claimed exemptions. In denying the motion for interim fees, the court identified several practical difficulties which it believed such an award would pose: it would require the courts to speculate about the relevant criteria in order to resolve the motion; it would entail duplication of effort; and it would discourage agencies from making partial document releases.

This court finds the reasoning of *Letelier* unpersuasive. No speculation is required for the court to resolve plaintiff's motion in the instant case. The issue to be decided, as discussed below, is whether plaintiff has substantially prevailed in the first phase of this litigation by securing release of the documents responsive to his request. Nothing which occurs in the future of this litigation will affect that question since the court's rulings on all the relevant issues to date are final and plaintiff cannot be required to return the documents already released. Furthermore, permitting plaintiff's interim fees motion will result in little duplication of effort. The hours spent in the initial phase of the litigation are easily identifiable and are distinct from those spent on exemption issues. Though the court will have to consider twice whether plaintiff has substantially prevailed, the question at each phase will be different. At the present stage, the issue is whether plaintiff substantially prevailed in the initial phase; at the close of the litigation the question will be whether plaintiff has substantially prevailed in the entire litigation. Finally, there is little basis for the suggestion that interim fees will discourage partial releases. On the contrary, by imposing costs on delay the availability of interim awards in appropriate cases may encourage agencies to act with the expeditiousness which Congress contemplated in enacting the FOIA.

Accordingly, it is within the court's discretion to award interim fees in the instant case.

---

**2.** Although *Letelier* is an unpublished memorandum and order, it merits analysis since the

issues it discussed are substantially the same as the ones involved here.

## II. The Appropriateness of an Interim Award in this Case

█ The courts have not directly addressed the issue of what considerations should guide a court in exercising its discretion to award interim fees. Consequently, the court must look to congressional intent to derive the relevant criteria. As discussed previously, in the legislative history Congress emphasized two policies as underlying the enactment of the attorneys' fees provision. First, Congress sought to facilitate citizen access to the courts by providing counsel with an incentive to take FOIA cases, and second, it aimed to discourage agency delaying tactics designed to achieve unjustified withholding of information. In light of these purposes, four factors can be distilled as guides to the court's exercise of discretion. First, the court should consider the degree of hardship which delaying a fee award until the litigation is finally concluded would work on plaintiff and his or her counsel. The Supreme Court in *Bradley* relied heavily on this factor in upholding the interim fee award in that case. 416 U.S. at 723, 94 S.Ct. at 2022. Similarly, in *Biberman,* the court found this consideration to be crucial. Second, the court should consider whether there is unreasonable delay on the government's part. When delay is present, an award of interim fees would serve the Congress' aim to discourage the use of illegitimate tactics. Third, the court should consider the length of time the case has been pending prior to the motion, and fourth, the period of time likely to be required before the litigation is concluded. For example, in *James v. Stockham Valves & Fittings Co.,* 559 F.2d at 358, the court based its interim award on the protracted nature of the Title VII litigation in that case, which at the time of the award had been pending for over seven years.

[4] Applying these factors to the instant case, the court concludes that an interim award is appropriate. Plaintiff has asserted and the government does not dispute that he cannot proceed with this litigation without the relief afforded by an award of interim attorneys' fees. (Declarations of John Powell and Thomas Steel.) This hardship alone may be enough to justify an interim award. *See Biberman v. Federal Bureau of Investigation,* 496 F.Supp. at 256. Moreover, as discussed above, the government has engaged in inordinate delay in responding to plaintiff's request, including the use of dilatory tactics such as requesting a stay for an indefinite period. The government even delayed complying with this court's order for over six months. Finally, this litigation has been pending for over a year and a half and is likely to continue for a substantial period of time. Although this litigation is not as protracted as some complex Title VII cases, it would be unfair to require plaintiff and his counsel to wait until its conclusion for an award of fees especially in light of the fact that counsel has taken plaintiff's case *pro bono.*

Accordingly, taken together these considerations require the conclusion that an award of interim attorneys' fees is appropriate in this case. The court therefore turns to consideration of whether plaintiff is otherwise entitled to attorneys' fees under § 552(a)(4)(E).

## III. The Requirements of § 552(a)(4)(E)

█ In the recent case of *Church of Scientology of California v. United States Postal Service,* 700 F.2d 486 (9th Cir.1983), the Ninth Circuit set forth in detail the standards applicable to attorneys' fees motions under § 552(a)(4)(E). The analysis is two-fold. First, the court must determine whether plaintiff has substantially prevailed and is therefore eligible for fees under § 552(a)(4)(E). To establish that he or she has substantially prevailed, plaintiff must show that the action "could reasonably have been regarded as *necessary* to obtain the information" and has had a *"substantial causative* effect on the delivery of the information." *Church of Scientology* at 489 (emphasis in original); *Exner v. FBI,* 443 F.Supp. 1349, 1353 (S.D.Cal.1978), *aff'd,* 612 F.2d 1202 (9th Cir.1980).

In the instant case, plaintiff could reasonably have regarded this suit as necessary for a variety of reasons. First, there is little question that this action was neces-

sary to secure release of the requested documents within a period of time even remotely approaching the statutorily mandated periods. *See* 5 U.S.C. §§ 552(a)(6)(A)– (B). This alone is sufficient to make filing suit reasonably necessary. Second, plaintiff is over sixty years old. In light of the Department's *ante litem* position, under which plaintiff could have expected not to obtain release of the documents until the year 2006, plaintiff reasonably anticipated that without filing suit he might not obtain the documents during his lifetime. Since he seeks the information primarily for writing projects, the Department's delay would have defeated his purpose. Finally, plaintiff believes that the lessons to be learned from the requested information about the need to protect citizens' First Amendment rights are particularly timely at the present stage in our nation's history. For this reason as well, plaintiff could reasonably have regarded this suit as necessary.

■ Plaintiff's suit has also clearly had a substantial causative effect on the delivery of the documents. In *Exner,* 443 F.Supp. 1349, the court found that plaintiff's suit had a substantial causative effect because she was successful in forcing the government to forego its normal first-in-first-out procedure and accord plaintiff's request expedited treatment. According to the court, "*[w]hen* the information is delivered may be as important as *what* information is delivered." *Id.* at 1353 (emphasis in original). In the instant case, by prosecuting this lawsuit plaintiff has successfully obtained the release of over three thousand pages of documents and corresponding *Vaughn* indices and has forced the Department to accord his request expedited treatment. Therefore, under *Exner* plaintiff's suit has had a "substantial causative effect." Accordingly, plaintiff is eligible under § 552(a)(4)(E) for an award of attorneys' fees.

The second part of the attorneys' fees analysis involves the question of entitlement to fees. Even when the plaintiff is eligible for an award of fees, the decision whether or not to award fees remains within the discretion of the court. *Church of Scientology,* 700 F.2d at 489; *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 710–13. Although the Act provides no guidance on how the court's discretion should be exercised, the *Church of Scientology* court applied the four criteria proposed in the pre-compromise Senate Bill and first adopted by the *Nationwide* case: (1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) the basis in law for the government's withholding of the records sought. The Joint Conference Committee, while not precluding the use of the specific criteria proposed by the Senate, deleted them, stating "that because the existing body of law on the award of attorney's fees recognizes such factors, a statement of the criteria may be too delimiting and is unnecessary." S.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6285, 6288. Therefore, the *Church of Scientology* court noted that these criteria should not be applied woodenly and must be considered in conjunction with the existing body of law on attorneys' fees. *Church of Scientology* at 492.

Plaintiff instituted the instant action not for commercial gain, but to shed light on the United States government's policy towards himself and other dissenting American citizens during the 1950's. In his affidavit, Powell states that he seeks this information to establish the truth of what he published and to prove that he was put on trial for the exercise of his First Amendment rights. The dissemination of the requested non-sensitive material is of great public benefit because of the perspective it may give on a most critical period in our nation's history. Finally, the government has not offered any plausible basis for its "foot-dragging" in releasing these documents, especially in light of the clear congressional intent for prompt and efficient dissemination under the Act. The court concludes that an award of fees is necessary to implement the Act. *See Nationwide,* 559

F.2d at 715. Accordingly, plaintiff is entitled to an award of attorney's fees at this time.

### IV. *The Award in this Case*

[7, 8] The determination of a reasonable fee is accomplished by consideration of the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and application of the lodestar and multiplier format developed by the Third Circuit, *Lindy Bros. Builders Inc. v. American Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*), 540 F.2d 102 (3d Cir.1976) (*Lindy II*).[3] *See Manhart v. City of Los Angeles, Dept. of Water and Power,* 652 F.2d 904, 907 (9th Cir.1981); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Brandenburger v. Thompson,* 494 F.2d 885, 890 n. 7 (9th Cir.1974). In *Jordan v. United States Dept. of Justice,* 691 F.2d 514, 517–18 (D.C. Cir.1982), the Court of Appeals for the District of Columbia specifically adopted this standard for FOIA cases. Initially, the court calculates the lodestar amount by multiplying the hours reasonably expended by a reasonable rate. The reasonableness of the hours and rate are determined by consideration of the twelve *Johnson* factors:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70. However, only those factors actually applicable to the individual case need be considered. *Keith v. Volpe,* 501 F.Supp. 403, 410 (C.D.Cal.1980); *Stanford v. Zurcher,* 64 F.R.D. 680, 682 (N.D.Cal. 1974), *aff'd,* 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

Plaintiff is represented in this action by Thomas Steel. By detailed declaration Mr. Steel has documented the time and labor expended as 202.25 attorney hours and 38.3 law clerk hours and has described the special problems he encountered in this case. In addition to the hours spent on legal motions and preparing the complaint, his declaration reveals that a significant percentage of his time was spent reviewing documents as they were released. This work was a necessary incident to the document release phase of this lawsuit and is analogous to document discovery in other civil cases. Counsel must review the documents to determine, *inter alia,* whether ref-

---

**3.** The use of a multiplier is appropriate under the Act since it is part of the calculation of a reasonable fee. *See Miller v. Webster,* 483 F.Supp. 883, 895 (N.D.Ill.1979), *rev'd in part,* 661 F.2d 623 (7th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982) (declining to award multiplier under the facts of that case); *Continental Cas. Co. v. Marshall,* 520 F.Supp. 56, 58 (N.D.Ill.1981) (same). The House Committee Report specifically refers to similar attorneys' fees provisions, such as 42 U.S.C. § 2000e–5(k) of the Civil Rights Act of 1964, which provide for the use of a multiplier against all parties, including the federal government. *See Copeland v. Marshall,* 641 F.2d 880, 892 n. 22 (D.C.Cir.1980) (en banc) (awarding multiplier against the Secretary of Labor in Title VII action and noting that a multiplier may be inappropriate in some FOIA cases where, unlike here, the plaintiff may receive

pecuniary gain from the information); *Richerson v. Jones,* 506 F.Supp. 1259, 1265–66 (E.D. Penn.1981). As under the Civil Rights Act, use of a multiplier in this case will "advanc[e] a strong congressional policy." H.R.Rep. No. 93–876, *reprinted in* [1974] U.S.Code Cong. & Admin.News 6267, 6272. In the recent case *Jordan v. United States Dept. of Justice,* 691 F.2d 514, 518 (D.C.Cir.1982), the Court of Appeals for the District of Columbia observed that § 552(a)(4)(E) provides for a multiplier in appropriate cases, stating,

the court might adjust the lodestar figure to reflect the risk attendant upon arrangements making compensation contingent on success in the case, value lost through delay in receipt of payment, and the quality of representation furnished on behalf of the moving party.

erences are made to other relevant documents which have not been released or otherwise accounted for. This work includes organizing, indexing, and cross-referencing the documents, in itself a vast undertaking in a case involving over three thousand documents. This task was severely exacerbated by the government's policy of releasing documents in small installments over a period of six months.

Additionally, Mr. Steel has included approximately eleven hours of time incurred in preparation of a motion for contempt. Although it was not necessary for the court to reach the motion, plaintiff nonetheless prevailed since it was not until after the motion was filed that a significant portion of the documents were finally released. Similarly, a number of hours were spent contesting the Department's contention that it was not responsible for the documents which it had referred to components of the Department other than the Criminal Division. The Department ultimately dropped this claim as well.

Although the hours requested are generally reasonable, the court has disallowed 23.1 attorney hours for time spent on exemption issues rather than the initial phase of this lawsuit. Hours spent on exemption issues are not compensable at this time because thus far plaintiff has only substantially prevailed on the document release phase of the lawsuit. In his work descriptions, Mr. Steel provides only one total hour figure for each day of work on this case even though he often worked on several different aspects of the case during a day. For instance, for September 17, 1982 he claims two hours and then describes his work:

> Travel to Powell residence; meet with Mr. & Mrs. Powell re recent DOJ release and deliver same to them; pick up release from Office of Legal Policy and review claims of exemption.

The court has disallowed the total hours for each day on which Mr. Steel worked on exemption issues. It is apparent, however, that Mr. Steel spent only a fraction of that total on the exemption issues, and plaintiff is theoretically entitled to an award for those hours spent on other issues. Accordingly, if Mr. Steel has proper documentation so that he can distinguish time spent on exemption issues and time spent on other issues, he may submit a further declaration, and the court will reconsider its disallowance of these hours. Otherwise, if appropriate, plaintiff may renew his request for these hours at the close of the litigation. Accordingly, the court will award fees for 179.15 out of the 202.25 attorney hours requested.

█ In fixing an hourly rate, the court has considered several of the other *Johnson* factors. Mr. Steel is an experienced attorney who has been practicing for eight years, during the last seven of which he has specialized in FOIA cases. It has been evident that he possesses the requisite knowledge and skill for this type of litigation, as demonstrated by the high quality of his briefs and arguments before this court. Mr. Steel's affidavit and the documentation of the time required make it clear that the acceptance of this case by his small firm has precluded other potential employment. Additionally, in his affidavit, plaintiff has declared that he is financially unable to pay Mr. Steel. Therefore, the prospect of any fee at all for Mr. Steel is contingent on this court's determination of plaintiff's attorneys' fees motion. The requested hourly rate of $75.00 for attorney time and $40.00 for law clerk time is similar to that awarded in other FOIA cases and is no higher than the customary fee for such litigation in this jurisdiction. Accordingly, the final calculation of the lodestar is 179.15 attorney hours at $75.00 and 38.3 law clerk hours at $40.00, for a total of $14,968.25.[4] This amount is directly and proportionately re-

---

4. As this court has previously decided, the use of law clerks is cost efficient and should be encouraged. Therefore, in order adequately to compensate for overhead expenses, law clerk hours should be included in the lodestar

amount rather than as costs. *Richardson v. Restaurant Marketing Associates, Inc.,* 527 F.Supp. 690, 700 (N.D.Cal.1981). *See also Jordan v. United States Department of Justice,* 691 F.2d 514, 522–24 (D.C.Cir.1982).

lated to the success plaintiff has achieved on the significant and discrete issue already resolved in his favor. *See Hensley v. Eckerhart,* 103 S.Ct. at 1940–43.

After calculating the lodestar amount, the court has the discretion to increase or decrease that figure by use of a multiplier. In evaluating the appropriateness of a multiplier, the two factors most commonly considered are the contingent nature of success and the quality of representation where it evidences "a degree of skill above or below that expected of lawyers of the caliber reflected in the hourly rates." *Lindy II,* 540 F.2d at 118. As noted above, in this case Mr. Steel has represented plaintiff on a *pro bono* basis. Consequently, his potential for receiving fees is contingent not only on whether plaintiff substantially prevails in this lawsuit but also on this court's willingness to award fees in its discretion. This court has observed that it is difficult to obtain counsel in FOIA cases. Frequently, litigants who are unable to obtain counsel appear in *propria persona* and consume undue amounts of the court's and the Government's time. Moreover, Mr. Steel's work in this case has been at a higher level of competence than that of attorneys with similar experience and the quality of his work is not adequately reflected in the $75.00 per hour rate awarded. In light of the contingent nature of the case and Mr. Steel's excellent work to date, the court concludes that a multiplier of 1.5 is appropriate.[5]

■ Accordingly, the total award of attorney's fees is $22,452.38. Additionally, the court grants the requested $153.49 in costs.[6]

IT IS SO ORDERED.

---

[5]. The court does not consider the rate and multiplier awarded to be determinative of any future award in this case.

[6]. To indicate which hours have been disallowed the court has filed a separate copy of Mr. Steel's hourly work descriptions and has lined through those hours which will not be awarded at this time.