Mark A. ALLEN, Plaintiff,

v.

DEPARTMENT OF DEFENSE, et al., Defendants.

Civ. A. No. 81–2543.

United States District Court, District of Columbia.

April 4, 1989.

---

**8**

James H. Lesar, Washington, D.C., for plaintiff.

Stephen E. Hart, U.S. Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM OPINION

FLANNERY, District Judge.

Mark Allen, a researcher into the assassination of President John F. Kennedy, has filed for an interim award of attorney's fees in this Freedom of Information Act ("FOIA") case. Because the plaintiff is both "entitled" to and "eligible" for such an award in the first phase of this case and such an award is consistent with the public policy of FOIA, the court grants the plaintiff's motion.[1]

I. Background

Plaintiff's requests for the release of documents in this case were filed with the Central Intelligence Agency ("CIA") and the Defense Intelligence Agency ("DIA") between December 15, 1980 and April 6, 1981. This action was filed on October 21, 1981. The plaintiff sought access to records of any communications between the United States House of Representatives' Select Committee on Assassinations ("Committee") and the two intelligence agency defendants.[2]

In a ruling on March 4, 1983, this court rejected a series of claims by the CIA that would have exempted from disclosure the entire stock of documents sought by the plaintiff. *Allen v. Department of Defense*, 580 F.Supp. 74 (D.D.C.1983). Specifically, the defendant CIA argued that: 1) the documents were Congressional and hence not subject to FOIA disclosure; 2) the documents were not "improperly withheld under FOIA" because the CIA was complying with a custodial agreement it had reached with the Committee; 3) the documents were all exempt from FOIA as "interagency memorandum" (FOIA exemp-

---

1. The court anticipates that the plaintiff will soon file the appropriate documentation to support an award of attorney's fees in the first phase of this case.

2. The Committee was created "to ascertain whether an earlier investigation into the assassination of president John F. Kennedy was adequate and lawfully conducted." *Allen v. Department of Defense*, 580 F.Supp. 74, 76 (D.D.C.

1983). In particular, the Committee was to determine whether there was full disclosure and cooperation by various intelligence agencies. *Id.* at 77.

According to the pleadings submitted to the court, the papers held by the DIA responsive to the plaintiff's requests were no more than a "few dozen." *Id.* at 77 n. 1.

tion no. 5).[3]

This court substantially rejected these claims by dividing the documents in question into three groups: 1) preexisting agency records requested by and submitted to the Committee; 2) Committee generated material based on information provided by the CIA and DIA; and 3) agency generated materials in response to Committee requests. *Id.* at 78. This court then found that while congressionally generated documents (category #2) were exempt from FOIA disclosure, documents in the other two categories—agency created documents prepared before the Committee existed (the overwhelming majority of the documents at issue) or agency created documents in response to the Committee's inquiries—were not exempt from FOIA disclosure.[4]

The court summarily rejected the CIA's second claim[5] and found that the claimed "category 5" objection was far too broad, ruling that "it was questionable whether the agency can demonstrate that preexisting agency records released to Congress fall within that exemption."[6] In the last footnote to its opinion, the court did note, however, that the agencies remained free to assert this (or any other) exemption with respect to particular documents.[7]

The last ruling in this case before document production could begin in earnest involved the issue of a "waiver" from processing costs. Each of the plaintiff's original FOIA requests requested a waiver of these processing fees. This court ruled on August 24, 1984, that the plaintiff was entitled to a waiver of these fees with respect to documents processed by the CIA.[8]

The collective effect of these rulings was to demonstrate the plaintiff's eligibility to receive all documents for which there was no specific exemption claim. According to the representations made by plaintiff's counsel and a representative from the CIA at oral argument on this motion, approximately one-third of the non-exempt documents in this case have been turned over to the plaintiff.[9]

---

3. *Id.* at 78. The DIA apparently joined only in the contention that the records sought by the plaintiff were "interagency memorandum" and therefore exempt from FOIA disclosure under exemption number 5. *Id.* at 77 n. 3.

4. *Id.* at 78–80. The court specifically found that the CIA's objections for the bulk of the documents at issue, those that had been created before the Committee existed, were the weakest arguments asserted: "They [the preexisting documents] cannot, *under any reasoning,* become congressional through the mere fact of congressional review." *Id.* at 81.

5. The exemption claimed was that the documents were "not improperly withheld" under FOIA. This court found that the argument merely rehashed the CIA's contention that the documents were Congressional. *Id.* at 82.

6. *Id.* at 83. While noting that the exemption could be applied to agency-congressional communications in appropriate cases, the court ruled that the case law required a "cautious approach" including the careful examination of the particular documents at issue. *Id.* at 83. This court also found that the objections raised by the Clerk of the House of Representatives under the Speech and Debate clause did not have to be answered because neither the Clerk nor any member of Congress had intervened to assert that objection. *Id.* at 84

7. *Id.* at 84 n. 7. The defendants have subsequently asserted various exemptions for specific documents. *See, e.g.,* Mem.Op. of Aug. 24, 1984 at 7–9 (upholding DIA's (b)(6) exemption claim); *Allen v. Department of Defense,* 658 F.Supp. 15 (D.D.C.1986) (upholding CIA's (b)(1), (b)(3), (b)(6), (b)(7)(C) & (D) exemption claims).

8. Mem.Op. of Aug. 24, 1984, at 11–14. The court found that some of the CIA's reasons for denying the waiver were entitled to little weight. In particular, the court found the CIA's claim that it had no knowledge of the plaintiff's scholarly purposes "incredible" after the D.C. Circuit had acknowledged those very purposes in earlier litigation involving the same parties. *Id.* at 12 (citing *Allen v. Central Intelligence Agency,* 636 F.2d 1287, 1289 (D.C.Cir.1980)). The court similarly rejected the CIA's contention that Congress had already made the determination as to what information from the Committee's investigation needed to be made public. *Id.* at 13–14.

9. Upon further inquiry, however, these same individuals were unable to estimate the date that all non-exempt documents would be turned over. And, as noted above, this court has subsequently ruled on a number of specific exemption claims. *See supra* note 3 (summarizing subsequent rulings).

## II. The Attorney's Fee Standards

■ The attorney's fees provision of the FOIA provides: "The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The case law that has developed under this provision requires a party to be both "eligible" for an award of attorney's fees and "entitled" to it. *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 870 (D.C.Cir.1981).

■ To be eligible for an award of attorney's fees, a party must be determined to have "substantially prevailed." *Id.* The issue in determining if a party has "substantially prevailed" is "largely a question of causation—did the institution and prosecution of the litigation *cause* the agency to release the documents obtained during the pendency of the litigation?" *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981) (emphasis in original).

■ In turn, once a party has demonstrated eligibility, attorney's fees will be awarded if in the court's discretion that party is so entitled. Among the factors a court should consider in granting attorney's fees in a FOIA case are: 1) the public benefit derived from the case; 2) the commercial benefit to the successful plaintiff; 3) the nature of the successful plaintiff's interest in the records; and 4) whether the agency had a reasonable basis in law for withholding the records. *Fenster v. Brown*, 617 F.2d 740, 742 (D.C.Cir.1979).

## III. The Arguments

The plaintiff presents a fairly straightforward argument under the standards described above. He claims that he has "substantially prevailed" over five separate threshold objections raised in this case: 1) the exemption 5 claim; 2) the congressional records objection; 3) the "improperly withheld" objection; 4) the exemption under the speech and debate clause; and 5) the processing fee claim.[10] In addition, he claims that he is entitled to such an award under the discretionary items listed above.[11]

The CIA primarily asserts statutory interpretation defenses to the plaintiff's claim for interim attorney's fees. Both arguments rely on the principle that waivers of sovereign immunity are to be narrowly construed. *See Campbell v. United States*, 835 F.2d 193, 195 (9th Cir.1987) ("Waivers of immunity are strictly construed in favor of the government, and courts should not enlarge such waivers beyond what a fair reading of the statute requires."). The government argues first that an award of interim attorney's fees is prohibited under the so-called Judgment Fund Statute, 31 U.S.C. § 3104(a), which establishes permanent and continuing appropriations for payment of money judgments against the United States. Under the terms of that statute, these money judgments are not "payable" until an appeal has been taken or the Attorney General certifies that none will be taken from an adverse decision.[12] Following from this re-

---

**10.** In fairness to defendants, the court notes that both plaintiff and defendants opposed the claimed Speech and Debate Clause exemption urged by the Clerk of the House of Representatives as amicus curiae. *Allen*, 580 F.Supp. at 84.

**11.** The plaintiff contends that he satisfies each of the four elements (benefit to the public, commercial benefit to the plaintiff, nature of plaintiff's interest in the documents, and the reasonableness of the agency's objections). He notes that in ruling that the plaintiff was entitled to a fee waiver, the court has already determined that the disclosure benefits the public. Second, he notes that he receives no commercial benefit from the disclosure. Next, he points out that his scholarly interest in these records, designed to improve public knowledge, is favored under the statute. Pltf's Mem. in Supp. at 9–12. None of these contentions is seriously disputed by the defendants.

**12.** The statute also requires the Comptroller General to certify that an underlying decision is final. According to the government, this certification also can only occur when the underlying judgment is final. Deft's Mem. in Opp. at 3–5. The government argues that the purpose of this requirement is the protection of the public fisc. They contend that "Congress has determined that the United States ought not to pay unreviewed orders of district courts where the United States contemplates appellate action...." *Id.* at 5.

quirement, the government essentially argues that interim attorney's fees should not be awarded because they will not be "payable" under the statute.[13]

The government defendants' second procedural argument stems from an interpretation of the attorney's fees provisions of FOIA. The agency defendants read the section literally and argue that since the provision does not specifically authorize interim attorney's fees, none should be awarded. Deft's Mem. in Opp. at 10.

Finally, the defendants argue that it is impossible to determine if plaintiff has "substantially prevailed" or is "entitled" to attorney's fees at this stage of the litigation, although they provide little support for these conclusions.[14] Similarly, they argue that it is impossible to determine if plaintiff is entitled to attorney's fees at this stage of the litigation.

## IV. Analysis

### A. Statutory Interpretation Arguments.

▪ The Ninth Circuit recently rejected identical statutory interpretation arguments in a challenge by federal defendants to an interim award of attorney's fees in a FOIA case. *Rosenfeld v. United States,* 859 F.2d 717 (9th Cir.), *pet'n for rehearing en banc denied,* No. 87-2975 (9th Cir. Dec. 22, 1988). The court rejected the judgment fund statute argument by correctly characterizing it as a "novel attack on *all* interim

fee awards against the United States." *Id.* at 726 (emphasis in original). The court then held that "[t]he judgment fund statute is not a superseding limitation on the government's waiver of sovereign immunity." *Id.* at 726–27.

The court also relied on several passages in the legislative history of the FOIA attorney's fee section to reject the argument that since the statute does not explicitly authorize attorney's fees, none should be awarded. Specifically, the court noted several favorable references in the legislative history to the attorney's fees provisions of other statutes that have been interpreted to permit awards of interim attorney's fees.[15] The court ruled that in light of "the clear Congressional intent that section 552(a)(4)(E) operate like comparable attorney's fees provisions," the government's argument that an express waiver of immunity for interim attorney's fees awards failed. *Id.* at 725.

The court finds this reasoning persuasive. The government has simply failed to offer any convincing arguments that would lead it to disagree with the Ninth Circuit's result.[16] In particular, the court credits the Ninth Circuit's finding that an award of interim attorney's fees is fully consonant with the public policy behind the Freedom of Information Act—to encourage an informed citizenry through full government disclosure.[17] For these reasons, the

13. Deft's Mem. in Opp. at 7 (*"even if an interim fee could be 'awarded' in this case,* the award is not payable until the appellate process has run its course.... Since there is no statutory authority permitting the payment of a monetary award when the United States has not reached a final decision on whether to appeal, a judicial order requiring immediate payment of such an award would plainly be unlawful.") (emphasis added) (footnotes omitted).

14. Presumably, the government relies on the fact that an appeal is still technically possible in this case. Given the government's decision to begin processing documents in this case following the court's 1983 ruling, the court finds this reliance dubious at best. The court notes that the government defendants specifically do not dispute plaintiff's contentions concerning his entitlement to attorney's fees in this case (e.g. his entitlement under the four factors listed above).

15. *Id.* at 724 (noting references to Civil Rights Act of 1964 and Emergency School Aid Act). The court also noted that the conference report on the bill containing the FOIA attorney's fee provisions directed the courts to consider the existing body of attorney's fee law in deciding whether to award fees. *Id.* at 724.

16. The court notes the Ninth Circuit's finding that the same Judgment Fund argument has been presented in several cases in the past few years with little success. *Rosenfeld,* 859 F.2d at 727 (citing cases). In addition, the Ninth Circuit found that in each of the cases in which this argument was rejected, "the government has managed to pay the interim award." *Id.*

17. As the court found: "When citizens must litigate against the government to obtain public information, especially when, as here, the release appears to be in the public interest rather than for merely commercial gain, it is entirely

court rejects the government's first two arguments in opposition to the motion for an award of interim attorney's fees.

### B. Plaintiff's entitlement to an award of interim attorney's fees

In their opposition to the plaintiff's motion, the government defendants correctly note that only one district judge has actually awarded interim attorney's fees in a FOIA case. Deft's Mem. in Opp. at 9 (citing *Rosenfeld v. United States Department of Justice*, No. 81-1206 (N.D.Cal. Oct. 1, 1987) (Patel, J.), *aff'd*, 859 F.2d 717 (9th Cir.1988) and *Powell v. United States Department of Justice*, 569 F.Supp. 1192 (N.D.Cal.1983) (Patel, J.)). A number of other district courts, however, have found that awards of interim attorney's fees are available under FOIA but that the requesting plaintiff in the underlying case had not established its eligibility for such an award. *Biberman v. Federal Bureau of Investigation*, 496 F.Supp. 263 (S.D.N.Y.1980); *Allen v. Federal Bureau of Investigation*, No. 81-1206 (D.D.C. Dec. 22, 1988); *Irons v. Federal Bureau of Investigation*, No. 82-1143, 1987 WL 17541 (D.Mass. June 26, 1987).

The factual backgrounds in each of these cases have many similarities. The requests in each of these cases have been filed after years of wrangling over voluminous documents with no short term end in site. The interim attorney's fees request in these cases has been for whatever action was necessary on the plaintiff's part to begin receiving non-exempt documents.

In approaching a request for interim attorney's fees, a number of these courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant. The courts have then focused on the plaintiff's eligibility to receive interim fees from the first phase of the case. The type of actions that were necessary by the plaintiff to begin the production of non-exempt documents in the first phase has varied considerably, however. *See Rosenfeld*, slip op. at 2 (document production schedule created only after FOIA action filed; plaintiff prevailed in processing waiver which was alleged to be necessary before the bulk of the documents responsive to his request could be produced); *Powell*, 569 F.Supp. at 1193-94 (plaintiff prevailed on motion to compel production of non-exempt documents and filed subsequent motion for contempt before non-exempt documents produced); *Biberman*, 496 F.Supp. at 265 (plaintiffs alleged that the filing of the case led government to produce 4,000 non-exempt documents which had previously been withheld); *Irons*, slip op. at 2 (plaintiffs allege that victory in processing fee waiver led to production of bulk of documents originally sought on an expedited basis).

With one exception, none of the cases to have addressed the propriety of an interim award of attorney's fees under FOIA involved anything remotely resembling the actions taken by the plaintiff here to begin the production of documents. In addition to prevailing on the question of a processing fee waiver, the plaintiff here had to overcome at least three threshold objections asserted by the defendant CIA to receive any documents.[18] Unlike the courts in *Irons* and *Biberman*, this court has no trouble concluding that but for the plaintiff's success in this suit, no documents would have been disclosed in this case.[19] The court can thus find no obstacle

---

appropriate that interim fee awards be available to enable meritorious litigation to continue." *Id.* at 725; *see Biberman v. Federal Bureau of Investigation*, 496 F.Supp. 263, 264-65 (S.D.N.Y. 1980) ("Experience teaches that cases arise in which the protracted nature of the litigation is such that, without the support of an interim award of attorneys fees, a plaintiff's meritorious claim might have to be dropped.").

**18.** This total excludes the threshold objection asserted by the Clerk of the House of Representatives which the court did not reach.

**19.** The *Irons* case involved a FOIA request by two university professors for documents that pertained to the Smith Act trials of 1948-49 in the Southern District of New York. *Irons*, slip op. at 1-2. The case had been pending for five years and included numerous rulings by the

to the plaintiff's recovery of an interim award of attorney's fees in this case.

The government defendants' reliance on *Letelier v. United States Dep't of Justice*, No. 79–1984 (D.D.C. Oct. 2, 1980), is misplaced. In *Letelier*, the plaintiff requested documents about herself and her deceased husband, a Chilean national assassinated in Washington, D.C. Unlike the plaintiff here, Mrs. Letelier filed for an interim award of attorney's fees when, subsequent to the filing of her case, the defendant agencies began producing documents. Significantly, however, the plaintiff had never prevailed in any motion filed before the court seeking a release of documents. *Id.* slip op. at 1. In fact, the court noted that "large numbers of documents are still being withheld in their entirety under claims of FOIA exemption." *Id.*

 Thus it was in a very different context that this court noted that interim awards of attorney's fees would likely result in duplication of efforts, as awards would be sought "each time an agency releases some, but less than all, the requested documents." *Id.* slip op. at 2. Under the approach adopted by the court today, an award for interim attorney's fees is only available for work leading toward the threshold release of non-exempt documents. Any claims for fees resulting from a dispute over the applicability of a particular exemption to specific documents

(a phase two dispute) would only be cognizable at the end of the litigation in question.[20]

Some FOIA cases today involve huge numbers of documents and disputes that span many years. Ultimate success in these cases can depend almost entirely on the financial wherewithal of the plaintiff. Especially in cases involving documents of settled value to the public, as in this case, a denial of interim attorney's fees on threshold issues that are no longer seriously disputed would undermine the fundamental purpose of the Freedom of Information Act. This court simply cannot permit the government defendants to cling to the hollow notion of a potential appeal to deny an award of interim attorney's fees over settled issues.

## V. Conclusion

For the foregoing reasons, the plaintiff's motion for an interim award of attorney's fees is granted with respect to the work performed in the threshold phase of this litigation. An appropriate order accompanies this opinion.

## ORDER

This matter came before the court on plaintiff's motion for an interim award of attorneys' fees. Upon consideration of the plaintiff's motion, the opposition thereto,

District Court and an appeal to the Court of Appeals when the plaintiffs renewed an earlier motion for attorneys' fees. *Id.* After dividing the case into two phases—the first corresponding to the productions of a bulk of documents following a successful processing fee waiver and the second corresponding to disputes over various exemptions claimed by the defendants, the court then proceeded to demonstrate that the plaintiffs were not clearly entitled to an award of attorney's fees in either phase of the case. Specifically, the court could not find a close "but/for" causal connection between the claimed waiver of processing costs and the production of all the documents at issue in the case. *Id.* at 8. The court also noted that the government had "expressed a willingness from the start to disclose the bulk of documents to plaintiffs...." *Id.* at 8–9. The record in this case demonstrates that the defendants, especially the CIA, have been anything but willing to produce the documents sought in this case.

In *Biberman*, the court simply had no evidence before it to determine if 1) the interim award was necessary to the further prosecution of the case and 2) if the suit had resulted in the production of documents which had not been previously available. 496 F.Supp. at 265.

20. This factual distinction also explains this court's finding in *Letelier* that interim awards in this type of case could very well have the undesirable effect of actually deterring agencies from partial disclosure of files. *Letelier*, slip op. at 3. The court's ruling today, approving of the plaintiff's eligibility for an interim award of attorneys' fees, would have no such effect. The government here claimed three threshold exemptions, in addition to denying a fee waiver, that would have denied the disclosure of any documents. There simply was no settlement here. The court expressly declines to address the propriety of other rulings awarding attorneys' fees when documents are produced simply after the filing of a FOIA case.

**14**

the entire record in this case, and for the reasons stated in the accompanying memorandum opinion, it is by the court this 4th day of April, 1989,

ORDERED plaintiff's motion for an interim award for attorney's fees is granted; and it is further

ORDERED that a status call shall be held in this matter on April 14th, 1989 at 9:30 a.m. to discuss a schedule for further proceedings in this matter; and it is further

ORDERED that parties shall be prepared to address the plaintiff's pending motion for discovery and defendants' pending motion for a protective order at this status call.