Alfred U. McKENZIE, et al., Plaintiffs,

v.

Ralph E. KENNICKELL, Jr., Defendant.

Civ. A. No. 73-0974.

United States District Court, District of Columbia.

Sept. 10, 1987.

Douglas L. Parker, Institute for Public Representation, William A. Bradford, Jr., Elliot M. Minceberg, Craig A. Hoover, Hogan & Hartson, Roderic V.C. Boggs, Wash. Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs.

John Bates, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

The specific question presented and resolved in this Memorandum Opinion is whether or not class plaintiffs in this Title VII protracted litigation who have prevailed on the merits and clearly proved that black workers employed at the United States Government Printing Office ("GPO") were victims of racial discrimination, are entitled to an interim award of attorneys' fees and legal expenses. The interim award is requested pending a determination by the Court of their full entitlement. Counsel for the GPO have stubbornly resisted payment of such an award.

The legal memoranda of counsel for the parties have been fully considered. For the reasons set forth below, the arguments advanced by the government are rejected.

## I. BACKGROUND

This Title VII litigation commenced in early 1973. For close to 15 years, the case has been vigorously pursued and hotly contested before both the trial and the appellate courts. On July 2, 1987 the Court approved a Stipulation and Final Order resolving all pending substantive issues. At a fairness hearing, immediately preceding the approval of the Stipulation and Final Order, several plaintiffs testified and summed up the significance of the litigation and the results achieved towards eliminating racial discrimination at the Government Printing Office. Mr. Willis E. Jones, one of the original class plaintiffs who had been employed at the GPO for 24 years before retiring in 1986, announced in open court that the law suit brought "a tremendous amount of improvements in the employment of black employees" and that the litigation resulted in "quite a victory for us." [1] The law suit brought about changes leading to eradication of long-existing discriminatory and unlawful employment policies and practices. Plaintiffs' counsel also negotiated a reasonable and fair award of monetary damages for their clients.

Having ultimately prevailed in their efforts, plaintiffs' counsel now seek reasonable compensation for services rendered over the course of this proceeding. On September 12, 1986 counsel were awarded an interim payment covering legal services provided and expenses advanced on behalf of plaintiffs for an earlier period of the litigation, from 1973–1980. *McKenzie v. Kennickell*, 645 F.Supp. 437 (D.D.C.1986). Now that the litigation has been finally resolved on the merits, they seek compensation for legal services rendered and expenses incurred since 1981.

The government concedes that plaintiffs are entitled to an additional award. Indeed, government counsel stipulated to a provision in the final order of July 2, 1987, that it would attempt to agree on the amount of costs, including reasonable attorneys' fees, to which plaintiffs were entitled. Prior to that commitment, which the Court viewed as having been made in good faith, the government had on hand for review since April 20, 1987, full documentation and support for plaintiffs' fee request. Plaintiffs submitted the data to allow the government to evaluate and determine the reasonableness of the amount requested by plaintiffs and, hopefully, to facilitate a settlement. Yet, five months later, no progress has been made. Contrary to the

---

**1.** Transcript of the Fairness Hearing at 9, 11 (July 1, 1987).

representation that it would make good faith attempts to agree on an award, it has contested and vigorously challenged every amount claimed. At a recent hearing, government counsel marshalled the usual array of arguments to support its position that plaintiffs' requests were excessive. It reiterated those objections raised in connection with the September 12, 1986 award, contending that the hours claimed were unreasonable, that the request improperly included charges for non-attorney time, that plaintiffs sought compensation for issues upon which they did not prevail, that plaintiffs failed to exercise appropriate billing judgment and cost containment, and that the billing rates exceeded prevailing community rates. Many of the objections could be characterized as minute, feckless and unjustified criticism.

Following the latest rejection of their fee request, plaintiffs petitioned the Court for immediate relief and requested payment at the very least, of that amount of the total request which the government could not reasonably dispute. Concerned that the request would escalate into a piece of full fledged litigation resulting in further delay of compensation earned and properly due, on August 10, 1987, this Court directed the government to identify an amount that in its opinion represented an irreducible minimum lodestar fee[2] to which plaintiffs were entitled. The order required that such amount should be paid "forthwith." That ruling was made because of the government's earlier affirmation that plaintiffs' counsel were entitled to a reasonable award for their efforts. Under the circumstances, it appeared to the Court that the government was in a position to identify an amount that it could not in good faith dispute. In accordance with the August 10 ruling, the government reported that $200,000 was an irreducible minimum award to which plaintiffs were entitled.

However, on the heels of that representation, the government moved for a modification or a stay of the "forthwith" payment provision of the order claiming that it did not allow time for proper consideration of whether or not to pursue appellate review. A stay for a period of 60 days pending such a determination was requested. Alternatively, it requested that the order be modified to provide that payment be made within 60 days.

Two grounds were advanced to support the motion. Counsel characterized the August 10 ruling as an interim order and contended that it was neither necessary nor appropriate; that interim fees are properly awarded only when counsel have become impoverished as a result of efforts and investment in an action and would otherwise have to abandon the litigation. Since the merits of this proceeding and the substantive litigation have been finally resolved, the government suggested that an interim award would only serve as a "fee-generation technique" to fund and encourage long-term fee litigation. As a second reason, counsel argued that the Court is not empowered to order interim fee awards against the federal government; that the provisions of 31 U.S.C. § 1304(a), governing payment of judgments against the United States, prohibit such awards and only permits payment when a judgment is final under 28 U.S.C. § 2414. The government maintains that the August 10 order was not final until "the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same...." 28 U.S.C. § 2414. Since Rule 4(a), Fed.R.App.P., grants the government 60 days to file a notice of appeal, the government argues that, at the very least, it should be granted a stay for 60 days to make a determination whether to appeal the August 10 order.

In opposing the government's motion, plaintiffs countered and argued that a motion for a stay to permit time to decide whether to appeal is futile because the August 10 ruling is not a final appealable judgment. They also pointed out that the government has conceded that plaintiffs deserve a reasonable award and thus its refusal to pay an undisputed minimum

---

**2.** *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

amount is a clear demonstration of bad faith.

The practical effect of the government's tactics to delay payment is to reduce the value of any award and increase unnecessarily plaintiff's litigation costs. Indeed, the government's present actions are a replay of the same scenario that followed the September 12, 1986 fee award. After that award was made, the government waited until the 59th day before filing a "protective" notice of appeal. The notice automatically stayed the entry of judgment. It then dallied an additional month, until mid-December 1986, before it finally decided to dismiss the appeal. Even then, plaintiffs did not receive the award until March 27, 1987, a delay of more than six months after the Court's opinion was issued.

## II. ANALYSIS

### A.

■ The government's "pauperization" principle is contrary, both to case law and the purposes behind the fee shifting statute. 42 U.S.C. § 2000e–5(k). The principle would require counsel to litigate themselves into the poor house before they could collect an interim fee. It would reduce the availability of interim awards and result in discouraging counsel from taking on deserving Title VII litigation.

Both our Circuit and the Supreme Court have affirmed "the propriety of an interim award once discrimination has been established." *Grubbs v. Butz*, 548 F.2d 973, 977 (D.C.Cir.1976). In *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), Justice Blackmun, in speaking for the Supreme Court, explicitly endorsed the liberal use of interim awards to minimize losses due to delay in payment when he concluded

[t]o delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional. intent to the contrary evidenced by the passage of [the act].

*Bradley*, 416 at 723, 94 S.Ct. at 2022. Indeed, Justice Blackmun's analysis undermines the government's claim that interim awards are only justified if counsel would otherwise run out of money to continue the litigation. The government's theory contravenes the very purpose behind the fee shifting statute to ensure effective access to the judicial process for persons who have claims under the civil rights laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 2–6 (1976), U.S.Code Cong. & Admin.News 1976, 5908, 5909–5913. In enacting the fee provision, Congress recognized that

in many cases ... the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep. at 2; U.S.Code Cong. & Admin. News at 5910. To promote these goals of effective access and encourage attorneys to accept Title VII cases, Congress explicitly affirmed the propriety of interim awards. The Senate Report accompanying the Act, cited *Bradley* for the proposition that "counsel fees may be awarded pendente lite. Such awards are especially appropriate where a party has prevailed on an important matter in the course of the litigation." S.Rep. at 5; U.S.Code Cong. & Admin.News at 5912. More recently *see also Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). ("Congress intended to permit the interim award of counsel fees ... when a party has prevailed on the merits of at least some of his claims.")

The availability of interim fees mitigates the otherwise prohibitive costs involved in litigating a complex Title VII class action. As this proceeding illustrates, such actions are often extremely protracted. Frequently, counsel are required to invest substantial time and resources without any certainty that they will be compensated. In this action, plaintiffs have performed with competence and skill to put an end to impermis-

sible employment policies and practices at the GPO. Despite their efforts and lasting results, they have yet to be compensated for a substantial amount of their work. Interim awards ameliorate the hardships caused in pursuing litigation of this nature. Otherwise, prospects of facing long delays dampens the enthusiasm of the public interest bar for accepting such cases and ultimately undermines the underlying remedial purposes of our civil rights laws.[3]

To foster and encourage acceptance of Title VII cases, our Circuit has authorized payment of interim awards for a lodestar amount which the parties do not dispute. In *Parker v. Lewis,* 670 F.2d 249 (D.C.Cir. 1981) our Circuit explicitly required the government to pay the amount which it did not contest. In a *per curiam* opinion, the Court expressed concern that

> the public policy dictating that attorneys' fees be awarded not be completely undercut by routine delays in payment of fees that are properly due and owing. Such delays have the potential to dampen substantially attorneys' enthusiasm to undertake discrimination cases. The court should not allow delay in cases such as this one to undermine the efficacy of Title VII policy.

*Id.* at 250.

Availability of interim awards is even more important in light of a later ruling, *Library of Congress v. Shaw,* —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). There, the Supreme Court prohibited levying interest against the United States for delay in payment. Our Circuit has interpreted *Shaw* to bar awards based upon current hourly billing rates to compensate for work completed at an earlier date when rates were lower as "simply a forbidden award of interest under another name." *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 52 (D.C.

Cir.1987), 622 F.Supp. 1160 (D.D.C.1985) (J. Richey). However, both *Shaw* and *Cumberland* involved actions where the parties were disputing the total fee request. In such cases where the parties refuse to agree on any irreducible minimum due plaintiffs no fees may be awarded until the fee litigation is resolved. Obviously, the longer the disputes are drawn out, the longer payment is delayed and the smaller the real value of the award. Speedy decisions on fee petitions and frequent grants of interim awards are necessary to minimize the loss in value of the total award. In instances when the government concedes that it owes the plaintiffs a reasonable fee award and identifies a representative amount, an interim award of that uncontested amount preserves at least the current value of that sum and reduces losses due to delay.

Finally, the government has failed to cite or refer to any proceeding in this or any other jurisdiction where the propriety of interim awards has been successfully challenged. Earlier in the proceedings of this very case, the government did not dispute an order granting an interim award. *McKenzie v. Kennickell,* 645 F.Supp. at 442. Similarly, in *Save Our Cumberland Mountains, Inc. v. Hodel,* No. 81–2134 (D.D.C. August 4, 1986) (J. Parker), the government did not challenge plaintiff's request for immediate payment of the amount which the government did not dispute. As in the present case, the government agreed to a final settlement on the merits and conceded that the plaintiffs were entitled to reasonable fees and costs. Accordingly, the Court granted plaintiffs an interim award an amount to which the government did not dispute. The government's decision to take issue with the propriety of interim awards appears as anoth-

---

**3.** In several recent cases the Supreme Court has severely restricted the total fee recovery against the United States government. *See, Pennsylvania v. Delaware Valley Citizens Council,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Blum v. Stenson,* 465 U.S. 890 (1984). According to the Court's pronouncements in *Delaware Valley,* plaintiffs are only entitled to an enhancement of the lodestar if they can demon-

strate that they have had difficulty finding counsel to pursue their action. If on top of this trend parties were prohibited from securing limited interim fees, lawyers would be severely discouraged from taking Title VII contingency fee cases. In an ironic twist, the long term effect of this trend might lead to a higher frequency in the award of multipliers.

er example of intransigent and unreasonable attempts to delay and extend this fee litigation.[4]

Awarding plaintiffs interim fee is fully consistent with the goals of Title VII, and with the case law in this jurisdiction.

**B.**

The government's other basis for resisting the August 10 Order, presents interesting issues. Our Circuit has not addressed whether 31 U.S.C. § 1304(a) and 28 U.S.C. § 2414 prohibit the assessment of an interim award against the United States. Nor did the parties cite authority from other jurisdictions addressing the question. Case law is extremely sparse. However, in a recent and well reasoned opinion, District Judge Joe Fish of the Northern District of Texas resolved this precise issue and upheld an interim fee against the United States. *Jurgens v. Equal Employment Opportunity Commission*, 660 F.Supp. 1097 (N.D.Tex.1987).

Both Title 28 U.S.C. § 2414 and 31 U.S.C. § 1304(a) are general provisions which authorize the appropriation of federal funds to pay final judgments against the United States. In contrast, Title VII is a more narrow statute which in relevant part extends liability to the federal government for unlawful discrimination against its employees. As Judge Fish noted in *Jurgens*

[to] the extent of any conflict ... the specific provision governing fees awards in Title VII cases 42 U.S.C. § 2000e–5(k), .. must prevail over the provisions in 28 U.S.C. § 2414 [and 31 U.S.C. § 1304(a)] governing payment of judgments generally. This conclusion is strengthened by the fact that § 2414 predates § 2000e–5(k) by several years. Under general principles of statutory construction, the newer, more specific provisions of 2000e–5(k) must prevail over the older, more

general provisions of 28 U.S.C. § 2414 [and 31 U.S.C. § 1304(a)].

*Id.* at 1102. The court considered the strong policies underscoring the narrower Title VII fee provisions in arriving at its decision. That statute specifically provides that the "United States shall be liable for costs [including attorneys' fees] the same as a private person." § 2000e–5(k). Originally, Title VII did not apply to the federal work force. But, recognizing that the federal government should lead rather than trail in the march against racial discrimination, Congress amended the Act in 1972 to extend liability for attorneys' fees and costs to the federal government. § 717 of Title VII, 42 U.S.C. § 2000e–16(d). In enacting the amendment, Congress clearly intended to provide federal employees with the same legal protections against employment discrimination as plaintiffs in the private sector. The Senate Report accompanying the Act stated "aggrieved [federal] employees or applicants will have the full rights available in the courts as are granted to individuals in the private sector under Title VII." S.Rep. No. 92–415 (1971).

▮ To carry out the statute's express instruction that the United States "shall" be treated identically with private persons for purposes of awarding attorneys' fees and costs, courts must award interim fee awards against the United States on the same terms as against a private employer. Any other interpretation of the statute would distort its plain language and violate Congress's intent. Indeed, if the general appropriation provisions, 28 U.S.C. § 2414 and 31 U.S.C. § 1304(a), were to prohibit an award of interim fees, then the government would no longer be treated identically with private parties. Therefore, application of the general provisions would undermine the very purpose of the amendment to Title VII and render it a nullity.[5]

**4.** Contrary to the government's claim that an interim award would merely serve as a fee-generation technique, the plaintiffs have no incentive to prolong the fee litigation. Since the plaintiffs cannot collect interest for losses due to delay, *Library of Congress v. Shaw,* —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the

longer they pursue their fees, the less valuable the ultimate award becomes.

**5.** This concession could form the basis for an alternative reading of § 1304(a) which would avoid any conflict with the Title VII fee provision in this action. Since the government has conceded it owed plaintiffs $200,000, that

■ The government's oblique suggestion that interim awards against the federal government are barred by the doctrine of sovereign immunity has no merit. Only this past term, the Supreme Court concluded that "[i]n making the Government liable as a defendant under Title VII, Congress effected a waiver of the Government's immunity from suit, and from costs including reasonable attorney's fees." *Library of Congress v. Shaw*, 106 S.Ct. at 2966. Unlike an award of interest, which the Court determined was historically viewed as a separate element of damages requiring an express and discrete waiver of sovereign immunity, an interim award is an integral part of the final judgment. No separate waiver is required. Moreover, the Court cannot stress enough that in this case, the interim award merely constitutes that amount which the government concedes it owes the prevailing party. Though principles of sovereign immunity bar charging interest against the United States, these principles do not entitle the government to retain funds it admittedly owes.

### C.

■ Finally, the Court is not persuaded that the government needs a 60 day stay to determine whether to appeal the August 10 Order. Under Rule 62(a), Fed.R.Civ.P., execution of judgment is automatically stayed 10 days to afford litigants time to consider whether to appeal or to seek some other form of review. 7 Moore, Federal Practice § 62.03 (1983). This period provides ample opportunity for a party to file a notice of appeal and obtain a stay under Rule 62(d). The government has not offered any good reason why it should be granted greater protections than those provided under the federal rules and be granted a 60 day stay to decide whether to appeal.[6] To the contrary, the government's past track record in this proceeding raises serious concerns and leads to the conclusion that it will use a 60–day stay merely to pursue questionable delaying tactics.

Further, the Court is disturbed over the government's intransigent opposition to the August 10th Order. That Order merely directed the government to pay plaintiffs that amount which its legal representatives conceded were due. Since plaintiffs will ultimately receive at least that award, the only benefit to the government in staying and possibly appealing the Order would be to gain the time value of that sum. Conversely a stay would serve to reduce the ultimate value of the fee award to plaintiffs.[7] On its most sinister level, the government's strategy appears to be another veiled attempt to discourage the public interest bar from representation in Title VII cases. Granting a stay would thwart the policy goals underlining Title VII and frustrate the public's interest in private enforcement of our civil rights laws. Certainly the government has the right to appeal the Order and has 60 days to make its decision. If it chooses to file a notice of appeal then it may invoke the stay protection of Rule 62(d).

### III. CONCLUSION

Availability of interim awards serves to prevent our civil rights laws from becoming "mere hollow pronouncements which the average citizen cannot enforce." S.Rep. No. 1011 at 6; U.S.Code Cong. &

---

amount could be construed as a "compromise settlement" for purposes of § 31 U.S.C. § 1304(a). That statute expressly authorizes appropriations for "compromise settlements." However, since the $200,000 figure does not completely resolve and settle the fee request, it is not technically a compromise settlement.

6. One District Court has held that courts are prohibited from staying execution of judgment beyond the 10 day period unless the party has filed a notice of appeal. *See United States v. One 1962 Ford Galaxie Sedan*, 41 F.R.D. 156 (S.D.N.Y.1966).

7. As an alternative to requiring the government to pay an irreducible minimum fee to plaintiffs' counsel directly, courts might consider requiring the government to pay that sum into an interest-bearing escrow account. This solution should satisfy the concerns of both parties. By placing the money into an escrow account, plaintiffs would not access the money to "fuel their fee litigation." Further, if the government were successful on appeal, repayment would pose no problems. Meanwhile, the plaintiffs would not lose the present value of the award when it is ultimately turned over to them.

**536**

Admin.News at 5913. Given the constraints of current case law, interim awards are even more vital to encourage the eradication of discrimination through the vigorous enforcement of our nation's civil rights laws.

On basis of the above, it is this 10th day of September, 1987,

### ORDERED

That the government's motion for a stay or alternatively for modification of the August 10, 1987 Order is denied.

That the government shall forthwith undertake all steps required to secure immediate payment of an interim award of $200,-000 to the plaintiffs. Counsel for the government shall file by September 17, 1987 a written report setting forth the efforts pursued to carry out this order.