859 F.2d 717
 57 USLW 2255
 Seth ROSENFELD, Plaintiff-Appellee,
v.
UNITED STATES of America; The Federal Bureau of
Investigation, Defendants- Appellants.
UNITED STATES DEPARTMENT OF JUSTICE, and Federal Bureau of
Investigation, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF
CALIFORNIA, Respondent.
Seth Rosenfeld, Real Party in Interest.
 No. 87-2975.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 18, 1988.
Decided Oct. 12, 1988.
As Amended on Denial of Rehearing and Rehearing En Banc Dec. 22, 1988.
 
 Gregory C. Sisk, Dept. of Justice, Washington, D.C., for defendants-appellants/petitioners.
 Thomas Steel, San Francisco, Cal., for plaintiff-appellee/real party in interest.
 Appeal from the United States District Court for the Northern District of California.
 Before SCHROEDER, FLETCHER and BOOCHEVER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The United States appeals a district court award of interim attorney's fees to Rosenfeld, plaintiff-appellee, in Freedom of Information Act (FOIA) litigation. We dismiss the appeal and deny the Government's petition for a writ of mandamus.
 
 BACKGROUND AND PROCEEDINGS BELOW
 
 2
 Seth Rosenfeld, a journalist, seeks disclosure under the Freedom of Information Act, 5 U.S.C. Sec. 552, of FBI documents relating to FBI activities on the University of California-Berkeley campus in the 1960s for use in connection with a book he is writing. Between 1981 and 1982 Rosenfeld filed the nine FOIA requests at issue in this case; with each he also requested a waiver of duplication fees pursuant to 5 U.S.C. Sec. 552(a)(4)(A), which allows the waiver of fees when disclosure of the information would be in the public interest. In February 1984, after three years without the release of any documents, the FBI agreed to waive 20 percent of the duplicating costs but still released no documents. Finally in February and March 1985 Rosenfeld filed actions seeking document release and a full waiver of duplication costs. Only then did the government begin releasing documents, and, on October 29, 1985, the district court ruled that the FBI must waive all duplication fees. Rosenfeld then filed a request for interim attorney's fees under 5 U.S.C. Sec. 552(a)(4)(E), which he alleged were necessary for his counsel, a four-attorney firm handling the case pro bono publico, to continue its representation.
 
 
 3
 On October 1, 1987 the district court awarded Rosenfeld $33,758.87 in interim attorney's fees and costs for time spent on the initial document release and duplication fee waiver aspects of the case, and ordered the government to pay the award within 60 days. The district court denied the government's motion for reconsideration or stay pending appeal. We granted a stay pending decision on the merits by our court. Also before us is Rosenfeld's motion to dismiss the appeal for lack of jurisdiction. Litigation over the government's claimed exemptions from disclosure of certain documents is continuing in the district court.
 
 DISCUSSION
 
 4
 The Freedom of Information Act provides attorney's fees to parties who prevail against the United States:
 
 
 5
 The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
 
 
 6
 5 U.S.C. Sec. 552(a)(4)(E).
 
 
 7
 The narrow subject of this appeal is the propriety of the district court's interim fee award and its order that the government pay the award in 60 days under threat of contempt of court. The government argues that the waiver of sovereign immunity contained in the FOIA attorney's fee provision, unlike most analogous provisions, does not extend to interim awards, and that even if it did, the order to pay within 60 days could not be obeyed without violating the Judgment Fund statute, 31 U.S.C. Sec. 1304. It urges our review to prevent the irreparable harm to the United States' sovereign immunity that would result from payment of an illegal award.
 
 
 8
 Our first hurdle is to ascertain a basis for appellate jurisdiction of this appeal. Rosenfeld has filed a Motion to Dismiss for lack of jurisdiction, contending that the interim fee award is not a final order under 28 U.S.C. Sec. 1291. If the award is not final, then the government asks for review notwithstanding, either under the collateral order doctrine, the Forgay-Conrad hardship exception, as appeal of an injunction under Sec. 1292(a)(1), or, finally, by considering its appeal as a petition for writ of mandamus.
 
 
 9
 I. Finality of the Grant of an Interim Fee Award under FOIA
 
 
 10
 Assuming for the moment that FOIA provides for interim fee awards, a point the government vigorously contests, such awards are not final, appealable orders.
 
 
 11
 Our circuit has not considered specifically the finality of interim fee awards under FOIA, nor, to our knowledge, has any other circuit. However, we have joined several other circuits in holding that the grant or denial of interim attorney's fees pursuant to other federal statutes is not an appealable final order under 28 U.S.C. Sec. 1291. In Hillery v. Rushen, 702 F.2d 848 (9th Cir.1983), we granted a motion to dismiss for lack of jurisdiction, holding that an interim fee award under 42 U.S.C. Sec. 1988 was not appealable under Sec. 1291. See also Morgan v. Kopecky Charter Bus Co., 760 F.2d 919, 921 (9th Cir.1985) (order denying interim attorney's fees under Title VII, 42 U.S.C. Sec. 2000e-5(k), not appealable); Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin, 829 F.2d 601, 602 (7th Cir.1987) (Section 1988 interim fee award not appealable as final order); Hastings v. Maine-Endwell Cent. School Dist., 676 F.2d 893, 895 (2d Cir.1982) (same); Yackowicz v. Pennsylvania, 683 F.2d 778, 782 (3d Cir.1982) (denial of interim fees under Sec. 2000e-5(k) not appealable final order); Ruiz v. Estelle, 609 F.2d 118 (5th Cir.1980) (Section 1988 interim fee award "patently not yet final").
 
 
 12
 The circumstances of this award do not distinguish it from other nonfinal interim fee orders. This award does not dispose of the underlying litigation; it did not come after a final judgment on the merits; it does not even dispose of the issue of attorney's fees, since the district court explicitly provided for revision of the amount at the conclusion of the litigation. Thus, we conclude that the district court's interim award is not a final order appealable under 28 U.S.C. Sec. 1291.
 
 
 13
 II. Appealability under Collateral Order Doctrine
 
 
 14
 A "small class" of nonfinal orders are nevertheless appealable if they satisfy the requirements of the narrow "collateral order doctrine" of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-1226, 93 L.Ed. 1528 (1949). The order sought to be appealed must:
 
 
 15
 1) conclusively determine the disputed question;
 
 
 16
 2) resolve an important issue completely separate from the merits of the action; and
 
 
 17
 3) be effectively unreviewable on appeal from a final judgment.
 
 
 18
 Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 531 (1978). "If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception to Sec. 1291." Gulfstream Aerospace Corp. v. Mayacamas Corp., --- U.S. ----, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988). Here, neither the first nor third requirement is met, nor possibly even the second.
 
 
 19
 1) Conclusive determination. Neither part of the district court's order is conclusive. The fee award itself determines neither the total amount of fees due Rosenfeld's counsel, nor Rosenfeld's absolute entitlement to attorney's fees. See Hastings v. Maine-Endwell, 676 F.2d at 896 (interim fee award not appealable collateral order because it does not determine claim for attorneys fees with finality). Here, upon completion of the district court proceedings, the government could recover the interim fees it paid out if it successfully appealed the determination that Rosenfeld had substantially prevailed on the duplication fee waiver issue, which formed the limited basis of the interim fee award. Also, the district court, after computing a lodestar figure based on compensable work, has explicitly refrained from applying a multiplier pending completion of the litigation.
 
 
 20
 2) Completely separate issue. The fee waiver determination was arguably an issue "completely separate" from the ongoing litigation of the merits of the government's claimed exemptions to document disclosure. (The government, however, never attempted to collaterally appeal the actual fee waiver determination.) The fee award, in contrast, although merited because Rosenfeld prevailed on the waiver issue, has a purpose intertwined with the ongoing litigation. One purpose of an interim award is to enable a meritorious suit to continue; its appeal, by freezing the progress of the ongoing litigation, thwarts that purpose.
 
 
 21
 3) Effectively unreviewable on appeal. This award is not "unreviewable on appeal" because, as mentioned above, the government can recoup erroneously awarded interim fees from Rosenfeld if it appeals from the district court's final disposition of the litigation. As Judge Posner pointed out in Palmer v. City of Chicago, 806 F.2d 1316, 1318 (7th Cir.1986), "the second 'prong' is part of the third." It can also, as in this case, overlap with the first.
 
 
 22
 The government relies heavily on Palmer v. City of Chicago to support its argument that the interim fee award is collaterally appealable under Cohen because of the irreparable harm that may be inflicted by an order to pay interim fees. 806 F.2d at 1318 (collateral orders appealable "only when they threaten irreparable harm"). In Palmer, a district court ordered a city to pay immediately interim fees that might not have been recoverable if the award was later held invalid. The Seventh Circuit held that the order threatened sufficient harm to justify appellate review. Palmer, however, does not support the government's position here. Judge Posner was careful to distinguish Palmer's holding from a hypothetical fact situation identical to that presented by the instant case. The "irrevocable harm" in Palmer would arise because interim fees were to be paid directly to a "revolving fund" of prisoners and defendants whose class members might, by the close of the litigation, be insolvent, have disappeared, or no longer even be parties, making recovery upon appeal impossible. 806 F.2d at 1319. In contrast, the Palmer court stated,
 
 
 23
 If (but for this appeal) the fees would have been disbursed to the lawyers rather than retained by the prisoners and defendants, the problem would be less serious ... we assume that the district court has an inherent power to order attorneys to whom fees were paid over by their clients pursuant to court order to repay the fees should the order be reversed.
 
 
 24
 Id. In the instant case, the government was ordered to pay the interim fees directly to counsel for Rosenfeld, thus satisfying Palmer's concerns. Nor does the threatened harm compare to that which convinced the Sixth Circuit to grant collateral order review in Webster v. Sowders, 846 F.2d 1032 (6th Cir.1988). In that case, the district court had imposed upon the State of Kentucky a prospective burden of large monthly fee payments with no definite cutoff date, despite the recipient's counsel's concession that repayment in the event of appellate reversal could not be assured. Id. at 1035.
 
 
 25
 Palmer also distinguished its holding from Hastings v. Maine-Endwell, 676 F.2d 893, based on the Palmer district court's intention to make its award final and not subject to any revision. 806 F.2d at 1320. In Hastings, the district court preserved the option to modify its interim award upon granting a final award. 676 F.2d at 897. Similarly, here, Judge Patel clearly contemplates revising Rosenfeld's fee award at the close of the litigation.
 
 
 26
 Furthermore, subsequent Seventh Circuit cases have emphasized the narrowness of Palmer's holding. See Lac Courte, 829 F.2d at 602; see also Sandwiches, Inc. v. Wendy's Int'l., Inc., 822 F.2d 707, 711 (7th Cir.1987). Following their lead, we hold that for an interim fee award to come under the collateral order exception, the government bears the burden of showing that ultimately it could not obtain repayment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians, 829 F.2d at 602. The government has not made such a showing.
 
 
 27
 III. Appealability under the Forgay-Conrad Hardship Exception
 
 
 28
 The government also argues that this case falls under the "hardship" rule of Forgay v. Conrad, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848), which permits immediate appeal if the order "requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." Matter of Hawaii Corp., 796 F.2d 1139, 1143 (9th Cir.1986). The order to pay $33,758 in fees within 60 days satisfies the "immediate turn-over of property" requirement. But for the reasons given above, we do not find that payment of this modest award will irreparably harm the United States.
 
 
 29
 IV. Appealability as an Injunction under 28 U.S.C. Sec. 1292(a)(1)
 
 
 30
 The government alternatively contends that the interim fee award is appealable as an injunction under 28 U.S.C. Sec. 1292(a)(1). This argument is unavailing. According to the government, the order to pay the fees within 60 days had the practical effect of granting an injunction, in that it required the performance of some act--payment of the award within a limited period of time. This fails, however, to rise to the status of an appealable injunction for reasons lucidly set forth by the Supreme Court in Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981):
 
 
 31
 For an interlocutory order to be immediately appealable under Sec. 1292(a)(1), however, a litigant must show more than that the order has the practical effect of [granting or] refusing an injunction. Because Sec. 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under Sec. 1282(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Baltimore Contractors, Inc. v. Bodinger, supra, [348 U.S. 176] 181 [75 S.Ct. 249, 252-53, 99 L.Ed. 233 (1955) ]. Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.
 
 
 32
 As indicated above, the government has not met its burden of showing irreparable harm. The government's strong reliance on Webster v. Sowders, 846 F.2d 1032, is misplaced. Although it is true that the Sixth Circuit reasoned that an interim fee payment should be considered the " 'practical' equivalent of an injunctive order" in situations where the appellant "has no other recourse", the Webster court also found the bases for collateral order jurisdiction. Id. at 1035-36. Furthermore, it also justified Sec. 1292(a)(1) review because the order to pay fees was "intertwined" with an actual preliminary injunction granted by the district court. Id. We conclude Carson compels finding that the district court's order is not an appealable injunction.
 
 V. Mandamus Jurisdiction
 
 33
 Finally, the government contends that if appeal is not proper, review by our court is available under the All Writs Act,[1] and have accordingly styled their appeal in the alternative as a writ of mandamus. We have jurisdiction to issue a writ of mandamus in any case for which we would have the power to entertain appeals at some stage of the proceedings. United States v. Harper, 729 F.2d 1216, 1220 (9th Cir.1984) (citing LaBuy v. Howes Leather Co., 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957). However, "the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 108 S.Ct. at 1143. Mandamus review is available "to confine an inferior court to a lawful exercise of its prescribed jurisdiction." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941-42, 87 L.Ed. 1185 (1943); Town of North Bonneville v. United States Dist. Court, 732 F.2d 747, 750 (9th Cir.1984). Court orders that exceed limitations on waivers of sovereign immunity by the United States are extra-jurisdictional. Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987). Here, the government contends that it has not waived its sovereign immunity for interim attorneys fees awards under FOIA. Thus, the jurisdictional issues raised in the government's appeal make mandamus review especially appropriate.
 
 
 34
 We consider five guidelines in determining whether to issue a writ of mandamus:
 
 
 35
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
 
 
 36
 (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
 
 
 37
 (3) The district court's order is clearly erroneous as a matter of law.
 
 
 38
 (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
 
 
 39
 (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 40
 Bauman v. United States Dist. Ct., 557 F.2d 650, 654-55 (9th Cir.1977) (citations omitted). All five factors need not be met for the writ to issue. United States v. Harper, 729 F.2d at 1222. On the other hand, "[w]hen the district court's order is correct as a matter of law, it is obvious that the writ of mandamus should not be issued." Survival Systems Div. of the Whittaker Corp. v. United States Dist. Court, 825 F.2d 1416, 1418 (9th Cir.1987), cert. denied --- U.S. ----, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988). Accordingly, we focus immediately on the district court's ability to issue interim fee awards under FOIA.
 
 
 41
 VI. Whether Interim Fee Awards under FOIA Violate Sovereign Immunity
 
 
 42
 The government presents two challenges to the district court's award of interim fees: first, that the FOIA attorney's fee provision is a limited waiver of sovereign immunity that does not include the payment of interim fees; and second, that the Judgment Fund statute prohibits payment of fees except in cases where there is a final order. Rosenfeld counters the government's assertion of sovereign immunity with the argument that this defense was not raised until appeal. We ordinarily do not consider issues that were not presented to the district court, Andersen v. Cumming, 827 F.2d 1303, 1305 (9th Cir.1987); however, jurisdictional challenges may be raised at any point in the proceedings. Fed.R.Civ.P. 12(h)(3). Because sovereign immunity defenses implicate the district court's scope of jurisdiction, we must consider the government's arguments.
 
 A. Legality of Interim Fees Under FOIA
 
 43
 The government contends that FOIA does not provide for interim fee awards; therefore, any such awards are an impermissible expansion of the limited waiver of sovereign immunity presented in the FOIA attorney's fees provision. This is a question of statutory interpretation, reviewable de novo. Southeast Alaska Conservation Council, Inc. v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983).
 
 
 44
 We have found no appellate cases and only two district court cases on point, both of which concluded, after thoughtful review of the FOIA legislative history, that Sec. 552(a)(4)(E) authorizes interim fee awards. Powell v. United States Dept. of Justice, 569 F.Supp. 1192 (N.D.Cal.1983) (relied upon by the court below); Biberman v. FBI, 496 F.Supp. 263 (S.D.N.Y.1980).
 
 
 45
 We believe that Powell and Biberman reach the correct result, and can add little to their thorough analyses. Interim fees are available to FOIA litigants because Congress intended Sec. 552(a)(4)(E) to operate like comparable provisions elsewhere in the U.S.Code, under which interim fees are clearly available.
 
 
 46
 First, the legislative history of the FOIA demonstrates no congressional intent to construe its attorney's fees provision differently from other such statutory provisions. To the contrary, both the House Committee Report and Senate Conference Report directed courts to look to other attorney's fees laws for guidance in deciding whether to award fees in FOIA cases. The House Committee Report, in explaining the basis for the attorney's fees provision, specifically cited to the attorney's fees provisions in the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000a-3(b) and 2000e-5(k), and Sec. 718 of the Emergency School Aid Act (repealed; formerly codified at 20 U.S.C. Sec. 1617), both of which provisions have been held to allow interim fee awards. H.R.Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 6267, 6272; see also S.Rep. No. 1200, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 6285, 6288 (Conference Report) (directing courts to consider existing body of attorney's fees law in exercising their discretion in deciding whether to award fees); Powell, 569 F.Supp. at 1197.
 
 
 47
 The courts, accordingly, tend to view the statutes as comparable. In Church of Scientology v. U.S. Postal Serv., 700 F.2d 486, 492 (9th Cir.1983), we looked to Sec. 1988 for guidance on whether a plaintiff had "substantially prevailed" under FOIA Sec. 552(a)(4)(E). In Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986), the Supreme Court encouraged courts awarding attorney's fees under Sec. 304(d) of the Clean Air Act, 42 U.S.C. Sec. 7604(d), to follow the principles and case law governing the award of attorney's fees under Sec. 1988. See also Pennsylvania v. Delaware Valley Citizens' Council (Delaware Valley II), --- U.S. ----, 107 S.Ct. 3078, 3080 n. 1, 97 L.Ed.2d 585 (1987). Following the Supreme Court's approach, we note that the FOIA attorney's fee provision shares many of Sec. 1988's objectives: the FOIA attorney's fee provision "was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by [FOIA]", 106 S.Ct. at 3095; and "unless reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims would not be redressed." Id. (citing H.R.Rep. No. 1558, 94th Cong., 2d Sess., 1 (1976), the House Report for the Civil Rights' Attorney's Fees Awards Act of 1976); for the FOIA legislative history, see note 4, infra.
 
 
 48
 The inquiry into the availability of interim fees under FOIA, therefore, is informed by the fact that interim fees are available under analogous fee-shifting provisions in other statutes. The Supreme Court in Hanrahan v. Hampton, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989-90, 64 L.Ed.2d 670 (1980), held that 42 U.S.C. Sec. 1988, which authorizes the award of attorney's fees to a "prevailing party" in a civil rights action, also authorizes the awarding of interim fees.[2] In Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 723, 94 S.Ct. 2006, 2022, 40 L.Ed.2d 276 (1974), the Supreme Court held that Sec. 718 of Title VII of the Emergency School Aid Act, (repealed; formerly codified at 20 U.S.C. Sec. 1617), which authorized an award of attorney's fees to a prevailing party "upon entry of a final order" against a local or state agency or the United States for failure to comply with the Act, authorized an interim award of fees.
 
 
 49
 The government argues that the FOIA waiver of sovereign immunity is narrower than the statutory provisions involved in these cases because the FOIA deals entirely with actions against the government, whereas the others were subjecting the United States to liability to the extent a private party would be liable.[3] Under the government's theory, the FOIA would have to contain an express waiver of immunity from liability for interim fees, in contrast to the other statutes, wherein the Supreme Court has inferred such a waiver. This argument fails because of the clear congressional intent that Sec. 552(a)(4)(E) operate like comparable attorney's fees provisions, and because interim fees so clearly further the purpose of the FOIA fee provision.
 
 
 50
 "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). As the district court recognized in Powell, the FOIA's express purpose "to mandate a policy of broad disclosure of government documents and maximum feasible public access to government information", 569 F.Supp. at 1197, would be contravened "if an agency could achieve the unjustified withholding of information solely because of its financial capacity to outlast the intended beneficiaries of the FOIA." Id. at 1199. Section 552(a)(4)(E)'s legislative history shows it was intended to facilitate people's access to information improperly withheld by an agency. See H.R.Rep. No. 1419, 92d Cong., 2d Sess. 8 (1972); S.Rep. No. 854, 93d Cong., 2d Sess. 16 (1974);[4] Biberman, 496 F.Supp. at 264.
 
 
 51
 When citizens must litigate against the government to obtain public information, especially when, as here, release of the withheld records appears to be in the public interest rather than for merely private commercial gain, it is entirely appropriate that interim fee awards be available to enable meritorious litigation to continue. We do not believe that Congress, after waiving sovereign immunity from attorney's fees for citizens seeking the release of information, would countenance the government's dragging its heels, thereby forcing impecunious litigants to abandon their quest.
 
 
 52
 B. Limitation of Judgment Fund Disbursements to Awards that are "Final Orders"
 
 
 53
 The government's second basis for claiming a violation of sovereign immunity is its contention that the district court lacked jurisdiction to order it to pay an interim fee award because 31 U.S.C. Sec. 1304(a), which provides for the payment of judgments against the United States out of the "judgment fund", permits payment only when a judgment is final under 28 U.S.C. Sec. 2414. Issues that implicate the government's sovereign immunity present jurisdictional questions. Wildman v. United States, 827 F.2d at 1309. We review questions involving the jurisdictional limitations of district courts de novo. South Delta Water Agency v. United States Dept. of Interior, 767 F.2d 531, 535 (9th Cir.1985).
 
 
 54
 The Judgment Fund statute, 31 U.S.C. Sec. 1304, provides in pertinent part:
 
 
 55
 (a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when--(3) the judgment, award, or settlement is payable ... (A) under section 2414 ... of title 28.
 
 Section 2414 provides:
 
 56
 Payment of final judgments rendered by a district court against the United States shall be made on settlements by the General Accounting Office....
 
 
 57
 Whenever the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same, he shall so certify and the judgment shall be deemed final.
 
 
 58
 Accordingly, the government contends it need not pay an interim fee award until the Attorney General has decided not to appeal the award. Put another way, an interim fee award does not become a "final judgment" for purposes of these statutes until the Attorney General certifies an intention not to appeal or exhausts the government's appeals.
 
 
 59
 This sovereign immunity argument, which presents a question of first impression for our circuit, is essentially a novel attack on all interim fee awards against the United States. If attorney fee awards cannot be paid until a final judgment is rendered, and if interim fee awards are not appealable orders, then payment of interim awards may be postponed until the conclusion of the litigation, rendering them no longer "interim".
 
 
 60
 The government has presented the identical argument in several cases over the last few years, without success. See Jurgens v. EEOC, 660 F.Supp. 1097 (N.D.Tex.1987) (Title VII interim fee awards); McKenzie v. Kennickell, 669 F.Supp. 529 (D.D.C.1987) (same); see also Young v. Pierce, 822 F.2d 1376 (5th Cir.1987) (describes district court's rejection of HUD's argument that no interim fees were payable under 31 U.S.C. Sec. 1304(a) until a final judgment on the merits; but this issue not appealed).[5]
 
 
 61
 In Jurgens, the court reasoned that the attorney's fees provision of Title VII was an express waiver of federal sovereign immunity and, "to the extent of any conflict" with the judgment fund statutes, "the specific provision governing fees awards in Title VII cases, 42 U.S.C. Sec. 2000e-5(k), must prevail over the provisions in 28 U.S.C. Sec. 2414 governing payment of judgments generally." 660 F.Supp. at 1102. While agreeing with the defendant EEOC that "waivers of sovereign immunity must be construed strictly in favor of the sovereign and not enlarge 'beyond what the language requires,' " 660 F.Supp. at 1101 (quoting Library of Congress v. Shaw, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986)), the Jurgens court found a clear waiver of immunity in Congress's passage of the attorney's fee provision.
 
 
 62
 The court in McKenzie v. Kennickell, 669 F.Supp. 529, essentially followed Jurgens in rejecting the government's same argument. It further reasoned that, because an interim award is but an integral part of the final judgment, no separate waiver of immunity is required. 669 F.Supp. at 535. We endorse the holdings of these two opinions as applied to FOIA. Since Congress waived sovereign immunity from attorney's fees in the FOIA actions, 5 U.S.C. Sec. 552(a)(4)(E), no additional waiver is required for interim fees. The Judgment Fund statute is not a superseding limitation on the government's waiver of sovereign immunity.
 
 
 63
 The government argues that Jurgens and McKenzie are inapposite because the FOIA attorney's fees provision is worded differently from Title VII's. The Jurgens court, in finding the government had waived its sovereign immunity to permit the payment of interim fees, had looked to the language of Title VII's attorney's fees statute, which made the United States "liable for costs the same as a private person." 42 U.S.C. Sec. 2000e-5(k) (emphasis added). We have already rejected this argument in the preceding section.
 
 
 64
 Policy considerations also cut against the government's position. If the district court could not order payment of interim fees until the government signified its intentions regarding appeal, the order would conform with 28 U.S.C. Sec. 2414. However, because interim fee awards are not appealable orders, no appeal could be taken until the conclusion of the litigation on the merits. Consequently, an interim fee award would not be payable until then, making nonsense of the concept of an interim award.
 
 
 65
 The government's insistence that the Judgment Fund is the only possible source of payment of an interim fee award is simply wrong. The Judgment Fund statute is itself a mechanism for facilitating payment of judgments, not a further limitation on the United States' waivers of sovereign immunity. See S.Rep. No. 733, 87th Cong., 1st Sess., reprinted in 1961 U.S.Code Cong. & Admin News 2439. We also note that when a court has rejected the Judgment Fund argument, the government has managed to pay the interim fee award. See Jurgens, 660 F.Supp. at 1102.
 
 
 66
 In sum, we find that principles of sovereign immunity do not shield the United States from interim fee awards in FOIA actions. The FOIA embodies the important federal policy of "broad disclosure of government documents and maximum feasible public access to government information." Powell, 569 F.Supp. at 1197. The crabbed position taken by the government in this case simply highlights the indispensability of citizen enforcement to the furtherance of that policy. The district court did not exceed its jurisdiction in ordering payment of an interim award; therefore, no writ of mandamus shall issue.
 
 
 67
 VII. Whether the district court abused its discretion in awarding interim fees in this case
 
 
 68
 Because we hold that interim fee awards are not appealable final orders, we lack jurisdiction to review the propriety of this particular fee award.
 
 CONCLUSION
 
 69
 We find that interim fee awards are not appealable orders. Because of the challenge to the district court's jurisdiction and the alleged harm to the United States, we have entertained the government's petition for writ of mandamus. Because we hold that the FOIA, like other statutes that allow attorney's fees against the government, permits an interim award of fees, we deny the writ. We lack jurisdiction to determine whether the district court abused its discretion in making this particular award to Rosenfeld.
 
 
 70
 Appeal DISMISSED and WRIT DENIED.
 
 
 
 [1]
 28 U.S.C. Sec. 1651, which provides:
 (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.
 
 
 [2]
 42 U.S.C. Sec. 1988 provides: In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs
 
 
 [3]
 See, e.g., Title VII's attorney's fees provision:
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. Sec. 2000e-5(k).
 
 
 [4]
 [The attorney's fee] provision was seen by many witnesses as crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insumountable [sic] for the average person requesting information, allowing the government to escape compliance with the law
 Congress has established in the FOIA a national policy of disclosure of government information, and the committee finds it appropriate and desirable, in order to effectuate that policy, to provide for the assessment of attorneys' fees against the government where the plaintiff prevails in FOIA litigation. Further, as observed by Senator Thurmond:
 We must insure that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs. Often the average citizen has foregone the legal remedies supplied by the Act because he has had neither the financial nor legal resources to pursue litigation when his Administrative remedies have been exhausted.
 S.Rep. No. 854, 93d Cong., 2d Sess. 16 (1974).
 
 
 [5]
 Research revealed only these published opinions. Jurgens also describes an unpublished opinion, Shafer v. Commander, Army and Air Force Exchange Service, 667 F.Supp. 414 (N.D.Tex.1985) in which AAFES paid an interim fee award under threat of sanctions after the trial judge summarily dismissed its Secs. 1304 & 2414 argument. The Fifth Circuit dismissed the appeal in an unpublished opinion, observing that an interlocutory appeal did not lie under 28 USC Sec. 1292(b) simply because the AAFES raised the issue of sovereign immunity. See Jurgens, 660 F.Supp. at 1101, n. 4 (describing Shafer v. Commander, AAFES, No. 85-1790, 5th Cir., September 26, 1986, slip op. at 2 [801 F.2d 397 (table) ]