Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued  February  17,  2004          Decided  May  14,  2004

No. 03-5079

TIMOTHY C. PIGFORD, ET AL.,
APPELLEES

v.

ANN M. VENEMAN, SECRETARY,
THE UNITED STATES DEPARTMENT OF AGRICULTURE,
APPELLANT

————

Consolidated with
03–5080

————

Appeals from the United States District Court
for the District of Columbia
(No. 97cv01978)
(No. 98cv01693)

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Robert M. Loeb*, Attorney, U.S. Department of Justice.

*Alexander J. Pires, Jr.* argued the cause and filed the brief for appellees.

Before: GINSBURG, *Chief Judge*, and HENDERSON, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Secretary of Agriculture appeals an order of the district court requiring the Department of Agriculture to advance $500,000 against attorneys' fees due counsel representing a class of black farmers in an anti-discrimination suit against the Department. The Government contends the district court abused its discretion because it failed to support the order with any findings regarding the hours claimed and the hourly rates sought by class counsel. Class counsel argue we lack jurisdiction to entertain the Government's appeal because the order to pay is not a "final decision" within the meaning of 28 U.S.C. § 1291. We agree with class counsel and dismiss the appeal for want of jurisdiction.

## I. Background

In 1997 a class of black farmers filed a lawsuit alleging the Department of Agriculture discriminated against them on account of their race, in violation of the Fifth Amendment to the Constitution of the United States, the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq. See Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C. Cir. 2000). In 1999 the Government and the plaintiff class agreed upon the terms of a consent decree settling the lawsuit. The Consent Decree established a two-track system for resolving the claims of individual class members: Each class member chose

either arbitration or mediation as the process for obtaining the relief available under the Consent Decree. Class counsel continue to work to implement the Consent Decree and to represent class members in both types of proceedings.

The Consent Decree also provided (¶ 14(a)) that class counsel

> shall be entitled to reasonable attorney's fees and costs under [the] ECOA, 15 U.S.C. § 1691e(d), and to reasonable attorney's fees, costs, and expenses under the APA, 28 U.S.C. § 2412(d) (as appropriate), that are generated in connection with the filing of this action and the implementation of this Consent Decree.

The Government and class counsel have since settled for $14.9 million all claims for attorneys' fees, costs, and expenses incurred from the filing of the case in 1997 through June 30, 2001.

The present appeal arises out of class counsel's November 2002 petition for attorneys' fees, costs, and expenses for the year ended June 30, 2002. Class counsel seek $858,685 for work in "implementation" of the Decree generally, and $836,000 for "nonimplementation work," which is the parties' term for work representing a claimant in either arbitration or mediation.

In December 2002 the district court ordered the Government to advance class counsel "$500,000 for implementation fees and costs." The Government paid the advance and now appeals the order to pay.

## II. Analysis

The Government argues its appeal presents an issue of first impression in this circuit, to wit: Whether "an advance of fees or an 'interim' fee award in the *post-judgment* period of litigation is immediately appealable" as a "final decision" within the meaning of 28 U.S.C. § 1291. (Emphasis in original.) The Government argues the post-judgment phase "should be treated as legally different from the pre-judgment period" for purposes of § 1291 because "the post-judgment

period can theoretically extend indefinitely," creating substantial uncertainty as to whether and when a party may appeal an adverse order.

Class counsel respond that we resolved this issue in *Trout v. Garrett*, 891 F.2d 332, 333 (1989). *Trout* was an appeal from an order requiring an advance of $276,044 in attorneys' fees. A motions panel of this court, following the lead of the Ninth Circuit in *Rosenfeld v. United States*, 859 F.2d 717 (1988), had "dismissed the appeal for want of a final or otherwise appealable order," and upon rehearing a merits panel did the same. 891 F.2d at 333 ("the sum and substance of the particular interlocutory order before us is not immediately appealable"). Because the appeal in *Trout* did not arise, however, after entry of a final judgment upon the merits of all the claims advanced against the appellant, *Trout* did not decide the precise jurisdictional issue presented here.

The Government argues *Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994), "supports the proposition that all post-judgment orders to pay fees are immediately appealable." Class counsel maintain *Gates* does not support the rationale for jurisdiction advanced by the Government, and we quite agree. In that case the Ninth Circuit had appellate jurisdiction pursuant to § 1291 because the orders of the district court disposing of several petitions for attorneys' fees "follow[ed] a final judgment on the merits, *and* they [did] dispose of the issue of attorneys' fees for monitoring work performed during the first period of the consent decree." *Id.* at 1450 (emphasis added). Where an order does not finally dispose of a fee petition even for a finite part of the post-judgment period, it is irrelevant that, as the Government points out, the post-judgment phase may be of indefinite duration.

The fee order here simply could not be a final decision under § 1291 regardless when issued because it "determines neither the total amount of fees due . . . nor [the] absolute entitlement to attorney's fees." *Rosenfeld*, 859 F.2d at 720; s*ee Trout*, 891 F.2d at 335 ("The award does not even dispositively determine fees due up to this stage of the litigation"). In fact, the district court "clearly contemplates

revising [the] fee award" at a later time. *Rosenfeld*, 859 F.2d at 722. The district court would hardly have encouraged the parties to settle if the order finally had resolved counsel's claim for attorneys' fees for the year ended June 30, 2002. *Cf. Catlin v. United States*, 324 U.S. 229, 233 (1945) (a final decision "leaves nothing for the court to do but execute the judgment").

In a more practical and discriminating vein, the Government also argues a post-judgment order to pay attorneys' fees "should be immediately appealable where counsel is unlikely to be able to repay an overpayment." The suggestion is that "irreparable harm to the government fisc . . . bolsters the finality of orders like the one[ ] at issue here."

The courts of appeal have considered "irreparable harm" relevant in determining whether jurisdiction is available pursuant to the collateral order doctrine — which the Government does not invoke — but not pursuant to § 1291 itself. *See Trout*, 891 F.2d at 335; *Rosenfeld*, 859 F.2d at 721–22; *Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986). Although the Government does not cite the case, its irreparable harm argument finds some support in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204 (1848), which held an interlocutory appeal will lie from an order that "directs the property in dispute to be delivered to the complainant" and "subject[s the appellant] to irreparable injury." We have questioned, however, whether "*Forgay* has continuing vitality apart from the collateral order doctrine." *Petties v. District of Columbia*, 227 F.3d 469, 472 (D.C. Cir. 2000) ("The Supreme Court has recognized but a single variation on the theme of finality, namely the collateral order doctrine"). If *Forgay* indeed has been overtaken by the collateral order doctrine, then the Government's present argument is surely foreclosed.

Be that as it may, the Government has failed to establish it is likely to suffer irreparable harm as a result of the fee order in this case. *See Rosenfeld*, 859 F.2d at 721–22 (government bears burden of proving it could not obtain repayment). The Government can be deemed irreparably harmed ex ante only

if the party and counsel awarded fees will "likely be unable to repay the fees if the award is later reduced or overturned." *National Ass'n of Criminal Defense Lawyers, Inc. v. U.S. Dep't of Justice*, 182 F.3d 981, 985 (D.C. Cir. 1999); *see Trout*, 891 F.2d at 335 (requiring "real prospect of irreparable harm" to permit exercise of appellate jurisdiction pursuant to collateral order doctrine). The Government does not present any evidence from which we could infer that class counsel "will likely" be unable to repay any amount advanced in error. Before the district court the Government disputed class counsel's entitlement to $413,500 of the $500,000 it was required to advance. When the Government filed this appeal, however, class counsel had pending petitions for almost $1.7 million in fees. Although some of the $1.2 million not here at issue may be disputed as well, we think it unlikely counsel will not ultimately be awarded at least enough to cover the amount now in dispute. In fact, the district court explicitly stated, "It is inconceivable that the Court would disallow as much as $792,000 of the fees sought based on poor record keeping, unreasonable hourly rates[,] or too many hours (or too many lawyers) spent on a given task."

Of course, if the district court were to continue to award class counsel additional advances against fees disputed by the Government, then at some point the amount in dispute may become so large in relation to counsel's fee petitions (and other assets) that the risk of default, should the Government prevail on its objections, would indeed constitute irreparable harm to the Government. The Government has not, however, made such a showing at this time.

Finally, the Government argues that, if the order at issue is not deemed final, then the district court may become inclined to issue a series of "interim" advances rather than to address and to resolve in a timely fashion the multiple attorneys' fees petitions pending before it. We cannot merely assume, however, the district court will shirk its responsibility to decide fee questions. The district court now has before it petitions for attorneys' fees covering a period of more than two years, which petitions it will, we trust, resolve soon, and not in a

piecemeal fashion, lest the Government's fears of irreparable harm acquire some substance.

### III.   Conclusion

For the foregoing reasons, the appeal is

*Dismissed.*